CITY OF MILWAUKEE, Respondent, v. ANTCZAK, Appellant.

*June 4—June 30, 1964.*

For the appellant there was a brief by *Eisenberg & Kletz-ke,* attorneys, and *Edwin A. Star* of counsel, all of Milwaukee, and oral argument by *Mr. Star.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Maurice L. Markey,* assistant city attorney, and oral argument by *Mr. Markey.*

DIETERICH, J.   A prosecution for violation of a municipal ordinance is a civil action under sec. 66.12 (1) (a), Stats.,[1]

---

[1] "An action for violation of a city or village ordinance, resolution, or bylaw is a civil action." See *State ex rel. Keefe v. Schmiege* (1947), 251 Wis. 79, 86, 28 N. W. (2d) 345, and *Milwaukee v. Bub* (1962), 18 Wis. (2d) 216, 218, 118 N. W. (2d) 123.

and the only question on the instant appeal is whether there is any credible evidence to support the verdict of the jury.

The record reveals the following facts. On October 26, 1962, at approximately 10:50 p. m., the appellant was arrested and charged with driving while intoxicated. The arresting officers testified that they first observed Antczak after his truck had been involved in a minor accident on South Chase avenue in the city of Milwaukee. They testified that he was swaying and unsteady on his feet; that his speech was quite slurred, and that they noticed a strong odor of alcohol on his breath. The appellant was taken to police headquarters, where he was given the usual tests. A urinalysis revealed that the alcohol content in his blood was 20/100ths of one percent by weight. The standard co-ordination tests were also administered to him—he was asked to write his name, to touch his nose with his finger, to pick up coins, to walk a straight line, etc., and he was also given a verbal test. The officers testified that the only test he "passed" was the one involving picking up coins. Appellant admitted having five small bottles of beer at a tavern prior to his arrest.

The appellant Antczak testified that on the day of his arrest he had been working with fiber glass, which made his eyes watery; that he drank warm beer because of a stomach condition, and that warm beer gives off a stronger odor than cold beer; that he swayed on his feet and could not negotiate the "straight line" test because he had shrapnel in one foot and glass in both feet as a result of his tour of duty in the armed forces; and that when he took the handwriting test, one of the officers was pulling on his arm. After testifying to the above reasons for his performance in the tests, he was asked the following questions on cross-examination:

"*Q.* You don't claim you got anything wrong with your tongue, do you? *A.* No, sir.

"*Q.* Now, you heard the officers testify that you spoke with a very slurred manner of speech, a thick tongue. *A.* That's what they said.

"*Q.* You ever been treated for any disease of the tongue? *A.* No, sir.

"*Q.* You have any malocclusion of your teeth? *A.* No, sir.

"*Q.* Ever sustained any injury to your mouth that would impair your speaking ability? *A.* No."

Defendant's counsel: "Object to this as having been answered already. Its repetitious."

Prosecution: "I'm just trying to find out what's wrong with his mouth. We have been through most everything else."

The Court: "All right, sustained."

The arresting officers testified after observing the appellant at the trial that his speech was not then as slurred as it had been on the night of the arrest, and that he was not swaying as he had been on that night.

The appellant attacks the various co-ordination tests administered to him at police headquarters as being sham, designed to prejudice the jury, and of no value whatsoever. The record reveals that the urinalysis test showed 20/100ths of one percent of alcohol in the appellant's bloodstream. Sec. 325.235 (1) (c), Stats., provides as follows:

"The fact that the analysis shows that there was fifteen-hundredths of one percent or more by weight of alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants."

It is the appellant's position that the aforementioned tests are not sufficient "corroborating evidence" to support a conviction. Such tests, however, are given at the station house after the arrest has been made, and are designed to verify the condition of a person who has already been ar-

rested because of his condition. Therefore, the critical facts are those existing at the time the officers first observed the appellant on South Chase avenue. The officers, who testified as to their experience in observing intoxicated persons, smelled a strong odor of alcoholic beverages on appellant's breath; they testified that he was swaying and unsteady on his feet, and that his speech was heavy and slurred. They also testified as to certain minor abnormalities in his conduct at the scene. The rule is that even a lay witness, who has had the opportunity to observe the facts upon which he bases his opinion, may give his opinion as to whether a person at a particular time was or was not intoxicated. The evaluation of the opinion of such a witness is for the jury. *Milwaukee v. Johnston* (1963), 21 Wis. (2d) 411, 414, 415, 124 N. W. (2d) 690.

The jury obviously believed the testimony of the officers and regarded it as credible—notwithstanding appellant's explanations of his physical appearance. Such testimony is sufficient corroboration under sec. 325.235, Stats.

Appellant also argues that the prosecuting attorney's cross-examination as to whether or not Antczak had something wrong with his mouth was an improper invasion of his basic constitutional rights, and, as such, must be considered reversible error. This contention is wholly without merit. Appellant had attempted to explain away almost every facet of his conduct on the night in question—the bloodshot eyes were attributed to exposure to fiber glass; the strong odor of alcohol resulted from the warm temperature of the beer he had consumed; his swaying was caused by shrapnel and glass in his feet; his collision with the parked car was due to newly installed brakes on his truck, etc. It was at this point that the prosecuting attorney began to question the appellant as to his slurred speech—one of the few things left unexplained by appellant on the direct

examination. We cannot say, upon the record before us, that such comments constitute a basis for reversal.

There being credible evidence to support the verdict of the jury, the judgment entered thereon must be affirmed.

*By the Court.*—Judgment affirmed.