STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Thomas J. KRAMSVOGEL, Defendant-Respondent.

Supreme Court

*No. 84–017–CR. Argued January 30, 1985.—
Decided May 29, 1985.*

(Also reported in 369 N.W.2d 145.)

102

For the plaintiff-appellant-petitioner the cause was argued by *Stephen W. Kleinmaier*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the defendant-respondent there was a brief by Terry W. Rose and Rose & Rose, Kenosha, and oral argument by Terry W. Rose.

LOUIS J. CECI, J. This is a review of an unpublished decision of the court of appeals which affirmed an order of the circuit court for Kenosha county, Max Raskin, reserve judge, presiding, dismissing a criminal complaint charging Thomas J. Kramsvogel (defendant) with criminal damage to property, contrary to sec. 943.01, Stats.[1] The circuit court dismissed the complaint on collateral estoppel and double jeopardy grounds, finding that the defendant had been convicted in a municipal court for the same acts which formed the basis for the state's charges against him in the criminal complaint. We reverse the court of appeals and hold that the double jeopardy clause prohibits only multiple criminal punishments. In this case, the municipal court proceeding against the defendant was a civil action. Therefore, we conclude that the civil action against Kramsvogel for violation of the municipal ordinances does not bar this subsequent criminal prosecution for violation of a state criminal statute, even though both proceedings concern the same actions of the defendant. Second, we hold that the doctrine of collateral estoppel is not applicable in this case. There are no facts that have been established

[1] Section 943.01, Stats., provides:
"**943.01 Criminal damage to property.** (1) Whoever intentionally causes damage to any physical property of another without the person's consent is guilty of a Class A misdemeanor."

against the state here, and, further, there is a lower burden of proof in civil cases than there is in criminal actions.

The facts that gave rise to the charges being filed against Kramsvogel are set forth in the criminal complaint, which alleges, in part,

". . . that on June 12, 1983, at Pleasant Prairie Township, in said [Kenosha] County, the defendant did: intentionally and unlawfully cause physical damage to the property of another without that person's consent; in that on said date at approximately 12:30 p.m., Officer Paul Ratzburg of the Pleasant Prairie Police Department had occasion to return to said defendant's residence for the fourth time that day on reports of excessively loud noise and music emanating from the residence of said defendant; further that as Officer Ratzburg pulled into the residence and informed said defendant that he would be issued Pleasant Prairie Ordinances for loud and unnecessary noise, said defendant was then ordered to have a seat in the squad car operated by Officer Ratzburg; and further that said officer then had occasion to run a TTY on said defendant and determine that there were two warrants outstanding for said defendant with bond amounts totaling in excess of $3,000; whereupon, with the assistance of Deputy John Paul of the Kenosha Sheriff's Department, said defendant was then placed under arrest and handcuffed and placed into the squad vehicle; further that during the course of said defendant being placed in said vehicle, he became very violent and loud, telling said officer to 'get f-----,' fish face, a------ and other reported obscenities were then directed at Officer Ratzburg; further that said defendant continued with such behavior when he was questioned as to where his children could be taken while he was to be brought to the Kenosha County Public Safety Building; whereupon, said defendant continued to be very loud, stated that he was going to break out the windows of the squad car; at which point, said defendant leaned back on the rear seat of said squad and broke out the rear driver's side window with a kicking motion of his feet; further that said conduct by the defendant was without the permission or consent of Officer Ratzburg of the Pleasant Prairie Police

Department; said conduct by the defendant being contrary to Section 943.01, Wis. Stats., . . . ."

On June 12, 1983, Officer Ratzburg issued two town of Pleasant Prairie municipal citations to Kramsvogel. The first citation alleged that the defendant violated sec. 9.06 of the municipal ordinances prohibiting loud and unnecessary noise by playing loud music. This citation is not in issue here. The second citation alleged that Kramsvogel violated sec. 9.03.1., Ordinances,[2] prohibiting disorderly conduct, by "using profane language and had to be put in handcuffs." The municipal record is not before this court; however, the parties agree that it contains the following description of Kramsvogel's conduct:

"Def. used profane language, said f--- you, kiss my a--, called K.S.D. unit fishface while in the back of my squad car. Also stated he was going to get me, etc. Def. then kick out the window in the squad car and condt. [sic] to act disorderly."

Kramsvogel pled guilty to these citations and was fined $122.

On June 13, 1983, the criminal complaint charging Kramsvogel with criminal damage to property was issued

---

[2] Town of Pleasant Prairie, Wisconsin, Ordinances, sec. 9.03.1. (1983), states,

"SECTION 9.03—DISORDERLY CONDUCT—No person shall engage in disorderly conduct, or conduct himself or herself in a tumultuous, riotous, or indecent manner. Any of the following acts constitute disorderly conduct under this section, the enumeration of which shall not be deemed exclusive;

"1. In a public or private place, making, aiding or assisting in making, any improper noise, riot, disturbance, breach of the peace or act tending to a breach of the peace, or engaging in violent, or abusive, or boisterous, or unreasonably loud or wrathful conduct under such circumstances in which such conduct tends to cause or provoke a disturbance or damage to public or private property."

by the Kenosha county district attorney. On June 29, 1983, the defendant filed a motion to dismiss the complaint, on the grounds that the charges against him were barred by either the double jeopardy clause or the collateral estoppel doctrine. The defendant argued that he pled guilty to the disorderly conduct charge in municipal court, believing that the charge included his act of breaking the squad car window, and, therefore, the state should not be allowed to subsequently charge him with criminal damage to property.

The circuit court granted the defendant's motion, finding that Kramsvogel was found guilty in the municipal court of the town of Pleasant Prairie for the same offense, based upon the same identical acts, as he is now being charged by the state. The circuit court held that if the state was allowed to proceed with this action, the defendant would be deprived of his right to protection under the double jeopardy provisions of both the state and federal constitutions. The circuit court's order dismissing the complaint was subsequently affirmed by the court of appeals.

## ISSUES

There are two issues before this court:

(1) Whether a criminal prosecution based upon a state statute, which follows a guilty plea of violating municipal ordinances, should be barred as a violation of protection against double jeopardy when both proceedings concern the same actions of the defendant; and

(2) Whether a criminal prosecution based upon a state statute, which follows a guilty plea of violating municipal ordinances, should be barred under the doctrine of collateral estoppel when both proceedings concern the same actions of the defendant.

*Double Jeopardy*

Defendant contends that this prosecution places him twice in jeopardy for the same offense, contrary to the fifth amendment to the United States Constitution and art. I, sec. 8 of the Wisconsin Constitution.[3] This is a question of law, and, therefore, we owe no deference to the trial court's determination. *State v. Denter,* 121 Wis. 2d 118, 122, 357 N.W.2d 555 (1984).

This court recently discussed the rationale underlying the prohibition against double jeopardy in *State v. Martin,* 121 Wis. 2d 670, 360 N.W.2d 43 (1985), where we stated,

" 'The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal compelling him to live in a

---

[3] The Fifth Amendment to the United States Constitution states, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Article I, sec. 8 of the Wisconsin Constitution states, "no person for the same offense may be put twice in jeopardy of punishment." The federal prohibition against double jeopardy was held applicable to the states through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland,* 395 U.S. 784 (1969). Additionally, this court has held that the state and federal double jeopardy guarantees are "identical in scope and purpose." *Day v. State,* 76 Wis. 2d 588, 591, 251 N.W.2d 811, *cert. denied* 434 U.S. 848 (1977). Due to the similarity of these two provisions, we have accepted decisions of the United States Supreme Court as governing the double jeopardy provisions of both constitutions. *State v. Rabe,* 96 Wis. 2d 48, 61 n. 7, 291 N.W.2d 809 (1980).

continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' *Green v. United States,* 355 U.S. 184, 187–88 (1957), quoted with approval in *United States v. DiFrancesco,* 449 U.S. 117, 127–28 (1980).

"A corollary of this principle of fairness is that the defendant once convicted and punished, should not live in a state of anxiety and insecurity for fear of further punishment for the same offense. The double jeopardy clause assures finality and fairness in the administration of the criminal justice system. *United States v. DiFrancesco,* 449 U.S. 117, 128–29 (1980)." *Id.* at 675–76 (footnote omitted).

The United States Supreme Court has analyzed the fifth amendment double jeopardy guarantee as consisting of three separate constitutional protections.

"It protects against a second prosecution for the same offense after acquittal. It protects against a *second prosecution* for the *same offense* after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969) (emphasis added; footnotes omitted), cited with approval in *State v. Sepulveda,* 119 Wis. 2d 546, 563, 350 N.W.2d 96 (1984).[4]

It is the second of these protections that we deal with in this case. To determine whether the double jeopardy clause prohibits the state from prosecuting Kramsvogel for criminal damage to property, we must make two findings—first, whether this proceeding constitutes a "second prosecution" as defined for purposes of the double jeopardy clause; and, second, whether both prosecutions are for the "same offense."

Our first inquiry begins with the long-established rule that the double jeopardy clause protects against two at-

---

[4] *See also, DiFrancesco,* 449 U.S. at 129, and Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich. L. Rev. 1001, 1062–63 (1980).

tempted *criminal* prosecutions. In 1938, the United States Supreme Court held,

"Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering v. Mitchell,* 303 U.S. 391, 399 (1938), cited with approval in *United States v. One Assortment of 89 Firearms,* —— U.S. ——, 104 S. Ct. 1099, 1103 (1984).[5]

This court has also held,

"The same act may subject one to a penalty under an ordinance and also to a criminal prosecution. But the two are distinct in their legal character, both as to the nature and quality of the offenses and the jurisdiction offended against. . . . *No rule is better settled in Wisconsin than that a prosecution under a city ordinance does not bar a prosecution for the same act under a state statute or under the common law." Milwaukee v. Johnson,* 192 Wis. 585, 590, 213 N.W. 335 (1927) (emphasis added).

*See also, State v. Lewis,* 164 Wis. 363, 365, 159 N.W. 746 (1916) ; *Kuder v. State,* 172 Wis. 141, 145–46, 178 N.W. 249 (1920) (and the cases cited therein) ; and *State v. Schulz,* 100 Wis. 2d 329, 330, 302 N.W.2d 59 (Ct. App. 1981). In applying this principle to the case at hand, the double jeopardy clause does not bar this prosecution if the municipal action was not a criminal proceeding and did not result in criminal punishment.

The defendant disagrees with this finding and cites *State v. Ramirez,* 83 Wis. 2d 150, 265 N.W.2d 274 (1978), for the proposition that there can be no prosecution for the same offense under both a state statute and a municipal ordinance, even if the municipal ordinance is civil,

---

[5] *See generally,* W. LaFave & G. Israel, *Criminal Procedure,* sec. 24.1 (b) (1984).

and not criminal, in nature. In *Ramirez,* this court stated in dicta,

"In a nut shell, a prosecution for an offense based upon a state statute bars a prosecution for the same offense based upon the same individual acts in a municipal court on a municipal ordinance and vice versa." 83 Wis. 2d at 153.

The criminal complaint in *Ramirez* alleged that Teresa A. Ramirez entered a drug store in Lake Geneva, Wisconsin, and was observed placing something in one of two handbags. A store employee noticed that several figurines were missing from a display case. The employee followed Ramirez as she left the store. When Ramirez noticed the employee, she threw one of the handbags and ran. She was captured by the store employee and held for the police. Several damaged figurines were found in the handbag that was thrown, and several other figurines were found in the second handbag. Ramirez was charged with shoflifting, in violation of secs. 943.50(1) and (4) (b), Stats. 1977.[6] Ramirez filed a motion to dismiss, which was accompanied by an affidavit claiming that she had pled guilty to two violations of city ordinances, namely, criminal damage to property and resisting or obstructing an officer. The affidavit stated that she was

[6] Sections 943.50(1) and (4)(b), Stats. (1977), provide,

"**943.50 Shoplifting.** (1) Whoever intentionally alters indicia of price or value of merchandise or who takes and carries away, transfers, conceals or retains possession of merchandise held for resale by a merchant without his consent and with intent to deprive the merchant permanently of possession, or the full purchase price, of such merchandise may be penalized as provided in sub. (4).

". . .

"(4) Whoever violates this section is guilty of:

". . .

"(b) A Class E felony, if the value of the merchandise exceeds $500 but not $2,500."

ordered to pay a forfeiture to the city of Lake Geneva and make restitution to the drug store for the damage. The trial court subsequently granted Ramirez' motion and dismissed the information.

The issue on appeal was,

". . . . whether a prosecution based upon a state statute should be barred as a violation of constitutional double jeopardy provisions because of a plea of guilty to violations of a municipal ordinance, both prosecutions arising from the same transaction." 83 Wis. 2d at 151.

In *Ramirez,* this court reversed the trial court, holding that the defendant would not be subject to double jeopardy by virtue of prosecutions under both the state statute and the municipal ordinance. 83 Wis. 2d at 157. We considered only the second phase of the double jeopardy analysis—whether the prosecution for violation of the state statute was for the "same offense" as the defendant had been found guilty of in the municipal court. We concluded that in applying the "same evidence test,"[7] the shoplifting statute was not the "same offense" as the

[7] The test applied in Wisconsin to determine whether multiple prosecutions are for the "same offense" for purposes of the double jeopardy clause is the "same evidence test," described as follows: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304 (1932). *See generally, Ramirez,* 83 Wis. 2d at 153–56. This rule has been codified in sec. 939.71, Stats., which provides,

"939.71 **Limitation on the number of convictions.** If an act forms the basis for a crime punishable under more than one statutory provision of this state or under a statutory provision of this state and the laws of another jurisdiction, a conviction or acquittal on the merits under one provision bars a subsequent prosecution under the other provision unless each provision requires proof of a fact for conviction which the other does not require."

municipal ordinances of damage to property and resisting or obstructing an officer.

In *Ramirez*, we never addressed the preliminary issue of whether the shoplifting charge constituted a "second prosecution" as defined for purposes of the double jeopardy clause, i.e., whether both proceedings were criminal prosecutions. We relied on *Waller v. Florida*, 397 U.S. 387 (1970), for the general rule that the double jeopardy clause bars prosecution for the same offense under both a state statute and a municipal ordinance, stating in dicta,

"If the state grants to its subordinate municipalities the right to enact penal-type ordinances triable in a municipal court, it has the duty to correlate the prosecutions so as not to offend the constitutional double jeopardy provisions." *Ramirez*, 83 Wis. 2d at 153.[8]

We must emphasize at this point that the holding in *Waller* is limited to those cases where the municipal proceeding is a criminal proceeding. In *Waller*, the penalty imposed for violation of the city ordinances was a criminal penalty; the accused was ordered to spend 180 days in the county jail. The United States Supreme Court rejected the separate sovereignty theory and applied the double jeopardy clause to bar the subsequent criminal prosecution for the same offense. 397 U.S. at 395. The Court would not permit the protections afforded by the double jeopardy clause to be circumvented by the state of

---

[8] However, in Wisconsin, it has been held unconstitutional for our legislature to delegate to municipalities the authority to create crimes. *See, State ex rel. Keefe v. Schmiege*, 251 Wis. 79, 28 N.W.2d 345 (1947), where we held a county ordinance declaring drunken driving to be a misdemeanor and imposing punishment by fine, imprisonment, or both, to be in violation of art. I, sec. 2 of the Wisconsin Constitution. We reasoned that the state, as sovereign, is the only governmental body that can create a crime and that the state cannot delegate that authority to a city, county or other municipality. 251 Wis. at 84–85.

Florida's delegating to its subdivisions the power to impose criminal punishment.[9]

In conclusion, we stress that *Ramirez* should not be interpreted as holding that the Lake Geneva municipal ordinances are criminal ordinances or that Lake Geneva has the power to enact criminal ordinances. We did not specifically address that issue in *Ramirez*. Additionally, the above-cited quote from *Ramirez*, 83 Wis. 2d at 153,[10] that is relied on by the defendant should not be misconstrued as applying in instances where the municipal violation is *not* a criminal offense. Our discussion in *Ramirez* has been explained in *State v. Schulz*, 100 Wis. 2d 329, where the court of appeals held that the finding of guilt on the county ordinance violation of operating a motor vehicle while intoxicated did not bar the state from trying the accused of violation of sec. 940.09, Stats., homicide by intoxicated user of vehicle,[11] because violation of the ordinance was not a criminal offense, and the penalty of a forfeiture was not a criminal penalty. In conclusion, the court held,

[9] *Accord, State v. Killebrew,* 109 Wis. 2d 611, 618, 327 N.W.2d 155 (Ct. App. 1982), *aff'd,* 115 Wis. 2d 243, 340 N.W.2d 470 (1983), holding, "Finally, it is of no consequence in Wisconsin that a later prosecution takes place in a judicial forum, while the prior discipline comes by way of administrative action. There is but one sovereign: the state. That sovereign may not delegate its power—here, to a subordinate administrative agency—so as to circumvent double jeopardy defenses. *State v. Ramirez,* 83 Wis. 2d 150, 153, 265 N.W.2d 274, 275 (1978)."

[10] *See,* p. 110 herein.

[11] Section 940.09(1)(a) and (b), Stats., provides,

"**940.09 Homicide by intoxicated user of vehicle or firearm.** (1) Any person who does either of the following under par. (a) or (b) is guilty of a Class D felony:

"(a) Causes the death of another by the operation or handling of a vehicle, firearm or airgun and while under the influence of an intoxicant;

"(b) Causes the death of another by the operation or handling of a vehicle, firearm or airgun while the person has a blood

"A different result is not required by *State v. Ramirez*. . . . In *Ramirez*, the court stated that there can be no prosecution for the same offense under both a state statute and a municipal ordinance. This statement was made with respect to penal-type ordinances, and therefore has no applicability to the non-penal sec. 346.63(1) violation. . . . In sum, [*Ramirez* does] not require the imposition of double jeopardy protection in the present case." 100 Wis. 2d at 331–32.

We now turn to the issue in this case of whether the Pleasant Prairie municipal ordinance is intended to be, or by its nature necessarily is, criminal and punitive or civil and remedial.[12] If we find that the ordinance is intended to be punitive, then the double jeopardy clause might prevent a subsequent prosecution for a violation of a state statute for the same offense. However, we hold that the ordinance violation was a civil proceeding, and, consequently, the double jeopardy clause does not prevent this criminal prosecution for violation of a state statute.

The issue of whether the municipal proceeding at which the defendant was assessed a $122 forfeiture was a criminal or civil proceeding imposing a criminal or civil punishment is a question of statutory interpretation. *Helvering*, 303 U.S. at 399; *89 Firearms*, 104 S. Ct. at 1105; *Schulz*, 100 Wis. 2d at 330. The United States Supreme Court has established a two-pronged analysis, stating,

"Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. See *One Lot Emerald Cut*

alcohol concentration of 0.1% or more by weight of alcohol in that person's blood or 0.1 grams or more of alcohol in 210 liters of that person's breath."

[12] For a discussion of the "civil-criminal" distinction, *see,* Clark, *Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis,* 60 Minn. L. Rev. 379 (1976).

*Stones v. United States,* [409 U.S.] at 236–37. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. See *Flemming v. Nestor,* 363 U.S. 603, 617–621 (1960). In regard to this latter inquiry, we have noted that 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.' *Id.,* at 617. See also *One Lot Emerald Cut Stones v. United States, supra,* at 237; *Rex Trailer Co. v. United States,* 350 U.S. 148, 154 (1956)." *United States v. Ward,* 448 U.S. 242, 248–49 (1980), cited with approval in *89 Firearms,* 104 S. Ct. at 1105.

Applying the first prong of the *Ward* test to the facts of this case, we conclude that our legislature intended the penalty imposed by this ordinance to be a civil penalty. First, our legislature has specifically authorized the use of a citation for an ordinance violation[13] and has expressly stated that an action for violation of a municipal ordinance is a civil action.[14] Additionally, sec. 939.12, Stats., defines crime as follows:[15]

---

[13] Section 66.119(1)(a), Stats., states,

"**66.119 Citations for certain ordinance violations. (1)** ADOPTION; CONTENT. (a) The governing body of any county, town, city or village may by ordinance adopt and authorize the use of a citation to be issued for violations of ordinances other than those for which a statutory counterpart exists."

[14] Section 66.12(1)(a), Stats., reads in part,

"**66.12 Actions for violation of city or village regulations. (1)** COLLECTION OF FORFEITURES AND PENALTIES. (a) An action for violation of a municipal ordinance, resolution or bylaw is a civil action." *Accord,* sec. 800.02(1), Stats., which provides,

"**800.02 Form of citation, complaint, summons and warrant in municipal ordinance violation cases. (1)** ACTION. An action in municipal court for violation of a municipal ordinance, or violation of a resolution or bylaw if the resolution or bylaw is authorized by statute, is a civil action and the forfeiture or penalty imposed by any ordinance of the municipality may be collected in an action in the name of the municipality."

[15] *See also, Keefe v. Schmiege,* 251 Wis. at 84, where we stated, "By definition long antedating the constitution of this state, a

"**939.12 Crime defined.** A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime."

Pursuant to sec. 939.12, violation of the municipal ordinance does not constitute a crime, because the ordinance is not a state law, and the violation is punishable only by a forfeiture.[16]

A similar issue arose in *State v. Peterson*, 104 Wis. 2d 616, 312 N.W.2d 784 (1981), where we looked to the legislature's intent to determine whether the civil or criminal statutes govern amendments to the pleadings in cases charging violations of state traffic offenses which prescribe a forfeiture. We held,

crime has been defined as an offense against the sovereign and a criminal action 'one prosecuted by the state against a person charged with a public offense committed in violation of a public law.' *State v. Hamley*, 137 Wis. 458, 461, 119 N.W. 114."

[16] Section 25.04, Town of Pleasant Prairie Ordinances, provides, "25.04 PENALTY PROVISIONS. (1) GENERAL PENALTY. Except as otherwise provided, any person who shall violate any of the provisions of this Code shall, upon conviction of such violation, be subject to a penalty, which shall be as follows:

"(a) First Offense. Any person who shall violate any provision of this Code shall, upon conviction thereof, forfeit not less than $5.00 nor more than $500, together with a penalty assessment and the costs of prosecution, and in default of payment of such forfeiture, assessment and costs of prosecution shall be imprisoned in the County Jail until such forfeiture, assessment and costs are paid, but not exceeding 90 days.

"(b) Second Offense. Any person found guilty of violating any ordinance or part of an ordinance of this Code who has previously been convicted of a violation of the same ordinance within one year shall, upon conviction thereof, forfeit not less than $10.00 nor more than $500 for each such offense, together with a penalty assessment and the costs of prosecution, and in default of payment of such forfeiture, assessment and costs shall be imprisoned in the County Jail until such forfeiture, assessment and costs are paid, but not exceeding 6 months."

"That the legislature intended that violations of state traffic laws involving forfeitures be treated as civil offenses is clear from the legislative history of chapter 346, Stats. 1977. In adopting the Uniform Traffic Procedure Act in 1971, the legislature amended many penalty provisions of ch. 346 to provide that any person found guilty of violating the traffic statutes would be punished by *forfeiture of a sum of money (a civil penalty) rather than by fine or imprisonment or both (criminal penalties)*." 104 Wis. 2d at 621 (emphasis added; footnote omitted).

Finally, it is a violation of art. I, sec. 2 of the Wisconsin Constitution for a municipality to impose criminal punishments.[17] Because the legislature does not have the power to delegate the authority to create crimes, we have held that a proceeding to enforce an ordinance is a civil action. *Neenah v. Alsteen,* 30 Wis. 2d 596, 601, 142 N.W. 2d 232 (1966), citing with approval *Keefe,* 251 Wis. 79, and *South Milwaukee v. Schantzen,* 258 Wis. 41, 44 N.W. 2d 628 (1950). For these reasons, we are convinced that our legislature intended a municipal action for violation of its ordinances to be a civil proceeding imposing a civil penalty.

We now address the second prong of the *Ward* test, which directs us to determine whether the $122 forfeiture assessed against the defendant is "so punitive either in purpose or effect as to negate" the legislature's intention to establish a civil remedial mechanism. *Ward,* 448 U.S. at 249. " ' "Only the clearest proof" ' that the purpose and effect of the forfeiture are punitive will suffice to override [the legislature's] manifest preference for a civil sanction." *89 Firearms,* 104 S. Ct. at 1106 (citations omitted).[18] We are not convinced by "clear proof" that the forfeiture here is punitive.

---

[17] *See,* n. 8 herein.
[18] In *Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963), the United States Supreme Court enumerated the following "tests

In *Milwaukee v. Johnson,* 192 Wis. 585, a standard was introduced by this court to determine the nature of an action under a municipal ordinance. We held,

"In all prosecutions under city ordinances the object of the proceeding is the same,—to collect the penalty or forfeiture which has been imposed by the ordinance. *The nature of the relief sought,* and not the possibility that some other proceeding may be brought which is based upon the same act or omission, *should be the test by which to determine whether the proceeding under the ordinance is civil or quasi-criminal in its nature." Id.* at 589 (emphasis added).

In conformance with this holding, we have consistently held that a forfeiture is a civil remedy.[19] We explained in *State v. H. Samuels Co.,* 60 Wis. 2d at 639,

---

traditionally applied to determine whether an Act of Congress is penal or regulatory in character . . . . Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions. Absent conclusive evidence of congressional intent as to the penal nature of a statute, these factors must be considered in relation to the statute on its face." Id., at 168–69 (footnotes omitted). This list is "neither exhaustive nor dispositive." *Ward,* 448 U.S. at 249.

[19] *See, State ex rel. Keefe v. Schmiege,* 251 Wis. at 84–85; *South Milwaukee v. Schantzen,* 258 Wis. at 43; *Milwaukee v. Bud,* 18 Wis. 2d 216, 218, 118 N.W.2d 123 (1962); *Milwaukee v. Antczak,* 24 Wis. 2d 480, 481, 129 N.W.2d 125 (1964); *Neenah v. Alsteen,* 30 Wis. 2d at 600–01; *Milwaukee v. Horvath,* 31 Wis. 2d 490, 492, 143 N.W.2d 446, *cert. denied* 385 U.S. 970 (1966); *Bayside v. Bruner,* 33 Wis. 2d 533, 535, 148 N.W.2d 5 (1967); *Madison v. McManus,* 44 Wis. 2d 396, 402, 171 N.W.2d 426 (1969); *State v. H. Samuels Co.,* 60 Wis. 2d 631, 639, 211 N.W.2d 417 (1973); *State v. Karpinski,* 92 Wis. 2d 599, 602, 285

"[O]rdinances in this state in their nature are not criminal. An ordinance is regulatory and prohibits undesirable conduct, but the consequences for its violation is a forfeiture rather than a fine or imprisonment."

The difference between a forfeiture and a fine is further described by this court as follows:

"An ordinance should not carry a greater forfeiture than the penalty proscribed [sic] for the same act as a crime. Punishment for a crime whether by imprisonment or fine is an end in itself and has for its object punishment and the deterrent effect. Forfeiture for an ordinance violation is not a criminal penalty and cannot be justified on the ground of punishing people. In theory at least, forfeitures are to pay the cost of efficiently enforcing traffic ordinances and regulations. Thus the forfeitures for ordinance violations cannot be so high as to serve as a revenue producing device; at least, its primary purpose cannot be the raising of revenue in lieu of taxation. *Milwaukee v. Hoffmann* (1965), 29 Wis. 2d 193, 138 N.W.2d 223." *Madison v. McManus,* 44 Wis. 2d at 402, cited with approval in *Village of Sister Bay v. Hockers,* 106 Wis. 2d 474, 480, 317 N.W.2d 505 (Ct. App. 1982).

*See also, State ex rel. Prentice v. County Court,* 70 Wis. 2d 230, 234 N.W.2d 283 (1975), where we rejected the argument that an action for violation of a municipal ordinance is in reality a criminal proceeding, holding,

"There are several fundamental reasons for this position. The first is that only the state is the sovereign, and that only an offense against the sovereign is a crime. Another reason is that violations of municipal ordinances are *minor offenses* for which a forfeiture is the only permissible direct punishment." *Id.* at 241–42 (emphasis added; footnote omitted).

The precise issue of whether a maximum forfeiture of $500 is so "punitive either in purpose or effect" to classify it as a crime was decided by the court of appeals in

N.W.2d 729 (1979); and *State v. Peterson,* 104 Wis. 2d 616, 621, 312 N.W.2d 784 (1981).

*Schulz*, 100 Wis. 2d 329, holding, "The potential forfeit-ure of $500 is not sufficient to trigger the protection of the double jeopardy clause." *Id.* at 331. The remote pos-sibility of imprisonment for failure to pay the forfeiture has also been rejected as justification for classifying an ordinance proceeding as a criminal action. *Prentice*, 70 Wis. 2d at 242, and *Schulz*, 100 Wis. 2d at 331.

Consistent with the above-cited cases, we hold that for purposes of the double jeopardy clause, a maximum for-feiture of $500 does not constitute a criminal penalty.

"[F] orfeiture of goods or their value and the payment of fixed or variable sums of money are sanctions that have long been recognized as enforceable by civil proceedings." *89 Firearms*, 104 S. Ct. at 1104, citing with approval *Helvering*, 303 U.S. at 400.

Further, a $122 forfeiture can hardly be said to be "so punitive in either purpose or effect as to negate" the leg-islature's intention that the sanction be civil. These or-dinances regulate only minor offenses, for which the only sanction is remedial, and we conclude that they are far from being punitive in nature.

In conclusion, we hold that the double jeopardy clause does not bar this criminal proceeding, because the double jeopardy clause prohibits only multiple criminal prosecu-tions, and the municipal action in this case was a civil proceeding. In so holding, we need not reach the second prong of the double jeopardy analysis concerning whether the charge of criminal damage to property constitutes the "same offense" as the two ordinances to which the de-fendant pled guilty.

### Collateral Estoppel

The defendant also raises the issue of whether this ac-tion should be barred under the doctrine of collateral

estoppel. This doctrine has been used by defendants in cases involving a second prosecution to bar the introduction of facts already resolved in a prior acquittal. The leading case in this area is *Ashe v. Swenson*, 397 U.S. 436 (1970), where the United States Supreme Court explained,

"The doctrine of *Benton v. Maryland*, 395 U.S. 784,[20] puts the issues in the present case in a perspective quite different from that in which the issues were perceived in *Hoag v. New Jersey, supra.*[21] The question is no longer whether collateral estoppel is a requirement of due process, but whether it is a part of the Fifth Amendment's guarantee against double jeopardy. And if collateral estoppel is embodied in that guarantee, then its applicability in a particular case is no longer a matter to be left for state court determination within the broad bounds of 'fundamental fairness,' but a matter of constitutional fact we must decide through an examination of the entire record. . . .
" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer*, 242 U.S. 85." *Id.* at 442–43 (citations omitted).

[20] In *Benton v. Maryland*, the United States Supreme Court held that the fifth amendment guarantee against double jeopardy is enforceable against the states through the fourteenth amendment.

[21] *Hoag v. New Jersey*, 356 U.S. 464 (1958), decided eleven years before *Benton*, considered collateral estoppel solely in terms of fourteenth amendment due process—whether the state's course of action against the defendant had "led to fundamental unfairness." *Id.* at 467.

Additionally, *United States v. Mock*, 604 F.2d 341 (5th Cir. 1979), defines the law of collateral estoppel as follows:

"Thus, *Ashe* mandates two inquiries: First, what facts were necessarily determined in the first law suit? . . . Second, has the government in a subsequent trial tried to relitigate facts necessarily established against it in the first trial? Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts. . . . Thus, while the parent doctrine of double jeopardy bars a subsequent prosecution based on a different section of the criminal code when 'the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other,' its progeny, collateral estoppel, bars only the reintroduction or relitigation of *facts* already established against the government. To state the distinction in more prosaic terms, the traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." *Id.* at 343–44 (emphasis in original; citations and footnote omitted).[22]

We hold that the doctrine of collateral estoppel does not bar this action for two reasons. One reason is that the doctrine of collateral estoppel, when applied in criminal cases, "bars only the reintroduction or relitigation of facts already established against the government." *Id.* at 343. In this case, the defendant was not acquitted, but pled guilty to violations of the municipal ordinances, and, therefore, no facts have been established *against* the state. Any facts established in the prior action were established against the defendant.

[22] *See also, Schleiss v. State*, 71 Wis. 2d 733, 740–44, 239 N.W.2d 68 (1976) (and the cases cited therein), and *Feela v. Israel*, 727 F.2d 151, 154 (7th Cir. 1984) (applying Wisconsin law).

Second, because of the difference in the burdens of proof in civil and criminal actions,[23] we conclude that the doctrine of collateral estoppel does not bar a criminal prosecution which follows a guilty plea to violations of municipal ordinances, even if both actions arise from the same transaction. *See, State ex rel. Flowers v. H&SS Department*, 81 Wis. 2d 376, 387–89, 260 N.W.2d 727 (1978), and *89 Firearms*, 104 S. Ct. at 1104. The defendant's guilt to the ordinance violations does not necessarily prove beyond a reasonable doubt the charge of criminal damage to property.

For the above-stated reasons, we reverse the court of appeals and remand this action to the trial court for proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (dissenting). For purposes of this dissent I assume, arguendo, that there is no violation of state or federal constitutional guarantees against double jeopardy. I point out, however, that if a

---

[23] *See generally, State v. Walberg*, 109 Wis. 2d 96, 325 N.W.2d 687 (1982), where we explained, "There are two different burdens of proof that apply in civil actions: fair preponderance of the evidence and clear and convincing evidence. The fair preponderance standard applies in ordinary civil actions. The clear and convincing standard applies in cases where public policy requires a higher standard of proof than in the ordinary civil action. This so-called middle burden of proof has been required in such cases as fraud, undue influence, and prosecutions of civil ordinance violations which are also crimes under state law." *Id.* at 102 (footnotes omitted). *See also, State v. Hamilton*, 120 Wis. 2d 532, 540, 356 N.W.2d 169 (1984), where we reiterated that the high burden of proof applies in criminal cases. "The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt."

forfeiture is not paid, the violator may be imprisoned. Sec. 66.115, Stats. 1983–84. *See* "Justice Denied," Milw. J., Apr. 21, 22, 23, 24, 25, 26, 29, 1985, May 5, 1985.

Even assuming no double jeopardy violation, I would affirm the circuit court and the court of appeals dismissing the criminal complaint.

First I am not persuaded that the town is authorized to adopt an ordinance prohibiting conduct the same or similar to that prohibited by the state statute penalizing criminal damage to property. See secs. 66.051(3), (4), 943.01, Stats. 1983–84. See also 66 Op. Att'y Gen. 58 (1977) ; *State v. Karpinski*, 92 Wis. 2d 599, 602–603, n. 6, 285 N.W.2d 729 (1979).

Second, in light of the language of secs. 66.051 and 66.-115, Stats. 1983–84, I cannot believe that the legislature intended that a person could be subject to two separate actions and two separate sanctions—one criminal by the state and one "civil" by the town—for a single act of misconduct.

Third, I conclude that double prosecution on these facts is contrary to the concept of fundamental fairness as found in the due process clause of art. I, sec. 8, of the Wisconsin State Constitution. *Cf. State v. Karpinski*, 92 Wis. 2d 599, 612, 285 N.W.2d 729 (1979).

For these reasons, I dissent.

WILLIAM A. BABLITCH, J. (dissenting). I believe that the admonitions of the double jeopardy clause and due process clause of the Wisconsin Constitution,[1] and the due process clause of the United States Constitution,[2]

---

[1] Article 1, Sec. 8 of the Wisconsin Constitution states: "No person may be held to answer for a criminal offense *without due process of law*, and no person *for the same offense may be put twice in jeopardy of punishment.* . . ." (Emphasis added.)

[2] Section 1 of the fourteenth amendment to the United States Constitution provides, in part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."

apply in this case. Because I believe that allowing the State of Wisconsin (State) to pursue its criminal complaint against the respondent, Thomas J. Kramsvogel (Kramsvogel), would subject him to double jeopardy for his conduct in a manner offensive to notions of fundamental fairness, I would affirm the decision of the court of appeals upholding the trial court's dismissal of the criminal complaint. After a summation of what I view as the essential facts and developments in this case, I will set out below the double jeopardy and due process arguments which support this position.

On June 12, 1983, a municipal police officer responded to reports of excessively loud music at Kramsvogel's home. After ignoring warnings to lower the volume, the officer ordered Kramsvogel into his squad car and proceeded to cite him for loud and unnecessary noise. As part of the procedure he ran a routine radio check on Kramsvogel and discovered two outstanding warrants. He then placed him under arrest. Kramsvogel became agitated, swore, and kicked out a window of the squad car. The officer subsequently issued a second citation for disorderly conduct. On the reverse side of that citation there appeared a full description of Kramsvogel's actions, including the breaking of the window.

Later that day Kramsvogel pled guilty to the disorderly conduct citation, a civil offense, and was subject to a $122.00 forfeiture by the municipal court. Kramsvogel contends that he understood his plea to encompass all of his conduct as set out on both sides of the citation. His contention remains undisputed in the record and was accepted as fact by both the trial court and the court of appeals.

The next day the State filed a criminal complaint based on the same conduct. While there were variations in the language of the state criminal complaint as compared with the municipal citation, both the trial court and the court of appeals viewed the criminal complaint

as proscribing the same conduct as the municipal citation. Kramsvogel filed a motion requesting dismissal of the complaint.

The trial court granted the motion, citing Kramsvogel's right to protection from double jeopardy. The State appealed to the court of appeals which, in an unpublished opinion, affirmed the trial court's ruling dismissing the complaint. The State then petitioned this court for review.

The record shows that the trial court relied on the following dicta contained in *State v. Ramirez,* 83 Wis. 2d 150, 265 N.W.2d 274 (1978), in making its original ruling:

> "If the state grants to its subordinate municipalities the right to enact penal-type ordinances triable in a municipal court, it has the duty to correlate the prosecutions *so as not to offend the constitutional double jeopardy provisions.* In a nut shell, a prosecution for an offense based upon a state statute bars a prosecution for the same offense based upon the same identical acts in a municipal court on a municipal ordinance and vice versa." *Id.* at 153.

I would likewise adopt and apply our statements in *Ramirez* as the rule to be applied in Kramsvogel's case.

The majority does not agree, and instead chooses to distance itself from *Ramirez.* Rather than apply *Ramirez,* it reverses the ruling of the court of appeals upholding the trial court's action and remands the cause to the circuit court, holding that "the double jeopardy clause prohibits only multiple criminal punishments." *State v. Kramsvogel,* majority opinion, p. 103. Kramsvogel now finds himself subject to a state prosecution based on the very conduct for which he believed he answered long ago in the municipal proceeding. I believe this result is contrary to notions of fundamental fairness and can be challenged on both the explicit double jeopardy and the implicit due process grounds in *Ramirez.*

There is admittedly a certain attraction in the neat, almost mathematical structure underlying the reasoning in the majority's opinion. The majority begins by deciding that the United States Supreme Court's decisions which interpret the double jeopardy clause of the Federal Constitution should control in all cases involving double jeopardy issues brought under Wisconsin constitutional law. In so doing, it adopts the federal rule that the double jeopardy clause protects against two attempted *criminal* prosecutions as the applicable rule in cases arising under the state double jeopardy provision as well. *See Helvering v. Mitchell,* 303 U.S. 391, 399 (1938). The majority then correctly points out the violations of municipal ordinances, regardless of the nature of the conduct they proscribe, are presumptively civil, both by state statute and by case law; only the state has the authority to create crimes.

In addition the majority places considerable reliance on *Milwaukee v. Johnson,* 192 Wis. 585, 590, 213 N.W. 335 (1927), where this court said that "[n]o rule is better settled in Wisconsin than that a prosecution under a city ordinance does not bar a prosecution for the same act under a state statute or under the common law." Because the municipal offense to which Kramsvogel pled guilty was and could only be civil, the majority concludes that the trial court and court of appeals acted improperly in respectively dismissing, and upholding the dismissal, of the state criminal complaint on double jeopardy grounds.

I take issue with the majority's analysis in three key respects. First, the rule of *Milwaukee v. Johnson* was explicitly called into question by the United States Supreme court in *Waller v. Florida,* 397 U.S. 387 (1970), as well as by the statements in *Ramirez* set out above. Second, I do not agree that it is necessary or appropriate to view United States Supreme Court decisions interpreting the federal double jeopardy clause as controlling,

in all respects, our state constitutional double jeopardy provision. Third, unlike the majority I would, for purposes of double jeopardy analysis under the Wisconsin Constitution, use the opportunity afforded by this case to develop, rather than distance myself from, a third category of penal-type or quasi-criminal municipal offenses—a category that has already appeared, for some constitutional purposes, in both federal and state case law alongside the more familiar criminal and civil categories. Each of these points shall now be considered in turn.

In *Waller,* the United States Supreme Court found "that the Florida courts were in error to the extent of holding that—'even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court.' " *Waller,* 397 U.S. at 395. This, in substance, is much like the rule of *Milwaukee v. Johnson* which nevertheless figures prominently in the majority's opinion. Moreover, in a footnote the Court listed the decisions of states which appeared to follow the Florida rule at the time *Waller* was decided. *Waller,* 397 U.S. at 391–92 n. 3. *Milwaukee v. Johnson* is included in that list, making its holding suspect in the post-*Waller* period.

I turn next to the second objection raised above to the majority's argument. The majority rightly points out that the federal prohibition against double jeopardy[3] has been held applicable to the states through the fourteenth amendment to the United States Constitution. *Benton v. Maryland,* 395 U.S. 784 (1969). At a minimum this means that defendants in state actions are entitled to the protections made explicit in United States

[3] The fifth amendment to the United States Constitution reads, in part, as follows: "No person shall be . . . *subject for the same offence to be twice put in jeopardy of life or limb. . . .*" (Emphasis added.)

Supreme Court decisions interpreting the federal double jeopardy clause. The majority, however, limits this court's ability to provide for *greater* protection under our state constitutional provision by a wholesale adoption of the holdings of United States Supreme Court decisions on federal double jeopardy law. Footnote three of the majority opinion reads as follows: "Due to the similarity of these two [double jeopardy] provisions, we have accepted decisions of the United States Supreme Court as governing the double jeopardy provisions of both constitutions. *State v. Rabe,* 96 Wis. 2d 48, 61 n. 7, 291 N.W.2d 809 (1980)*." State v. Kramsvogel,* majority op., p. 107. In *Rabe,* this court stated: "Because of the similarity between the federal and Wisconsin provisions, this court has accepted, *where applicable,* decisions of the United States Supreme Court as governing the double jeopardy provisions of both constitutions." *Rabe* at 61 n. 7. (Emphasis added.)

*Rabe* dealt with whether the state and federal double jeopardy provisions prevented the state from charging four counts of homicide by negligent operation of a vehicle where the defendant allegedly caused the four deaths by a single act of negligence. This court framed the issue as one of multiplicity; that is, was the defendant charged in more than one count for a single offense? We held that each count related to a separate and distinct offense and did not violate either double jeopardy provision. *Under these facts* we found that the reasoning contained in federal decisions to be applicable to our interpretations of the state double jeopardy provision.

I would not, however, find federal double jeopardy decisions applicable to our state constitutional provision in *every* instance. Notwithstanding the federal rule which allows for simultaneous or successive criminal and civil sanctions for the same offense, I would afford greater protection under the state constitutional double

jeopardy provision for individuals in Kramsvogel's position.

It is well-established that state courts, under state law, are always free to take a more expansive view of individual rights than do federal courts under federal constitutional law. *See e.g., Pruneyard Shopping Center v. Robins,* 447 U.S. 74 (1980). *See also Oregon v. Hass,* 420 U.S. 714 (1975); Comment, *Developments in the Law—The Interpretation of State Constitutional Rights,* 95 Harv. L. Rev. 1324 (1982); Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489 (1977); Comment, *Rediscovering the Wisconsin Constitution: Presentation of Constitutional Questions in State Courts,* 1983 Wis. L. Rev. 483 (1983).

Moreover, while the wording of the two double jeopardy clauses are similar, they are not identical. The state provision provides that no person "for the same offense may be put twice in jeopardy of *punishment";* the federal provision, that no person shall "be subject for the same offense to be twice put in jeopardy of *life and limb."* Because individual rights are involved, I opt for a broad reading of punishment as it appears in the state double jeopardy provision; certainly this language is broader than the federal "life and limb" counterpart. Fines and imprisonment are punishments for violations of criminal law. By contrast, forfeitures, as the majority implies, are civil punishments. In my view these various punishments are different in degree but not in kind. Kramsvogel, in being assessed a $122.00 forfeiture for the municipal citation, was subject to punishment. If, as both the trial court and court of appeals found, the state criminal complaint filed against Kramsvogel described substantially the same offense as the municipal civil citation to which he pled guilty, then the double jeopardy provision *of the Wisconsin State Constitution* demands the dismissal, under state law, of the State's complaint in Kramsvogel's case. This result would not

necessarily follow under the federal constitutional double jeopardy provision, however, since it does not appear that a civil forfeiture equates to "jeopardy of life and limb" under federal law.

Finally, it is my view that jeopardy should at the very least attach to convictions and acquittals entered pursuant to "penal-type ordinances." *Ramirez*, at 153. While *Ramirez* did not reach the question of what constitutes a penal-type ordinance, the term would appear to encompass at a minimum any municipal civil ordinance proscribing an offense as set out in a state criminal statute.

Additional guidance on the question is provided by the United States Supreme Court, which recently labeled a municipal ordinance, "quasi-criminal" because of its "prohibitory and stigmatizing effect" even though imposing only civil penalties. *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 499, n. 16 (1982). The defendant in *Hoffman Estates* challenged a municipal ordinance, imposing civil penalties for the sale of drug paraphernalia, as void for vagueness under federal constitutional doctrine. In its analysis the Court acknowledged a "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99. But the "quasi-criminal" nature of the *Hoffman Estates* ordinance and "its prohibitory and stigmatizing effect may warrant a relatively strict test [under the vagueness doctrine]." *Id.* at 499. The mechanical decision to discard constitutional double jeopardy considerations in all cases involving dual prosecutions under a criminal statute and a civil ordinance is the antithesis of the stricter constitutional scrutiny "quasi-criminal" civil ordinances should attract.

The majority passes up the opportunity to expand upon and clarify the language appearing in *Ramirez* and *Hoffman Estates* for purposes of double jeopardy analysis under state constitutional law. Nevertheless, the

municipal citation, as set out in the majority opinion, would appear to meet what guidelines do exist for demonstrating a double jeopardy violation. The record reveals that the offense charged under the municipal ordinance in this case was substantially the same offense as that proscribed by the state statute under which Kramsvogel was subsequently charged. The wording of the ordinance is clearly prohibitory and conviction under the ordinance would, in the eyes of the ordinary citizen, have a stigmatizing effect on the reputation of a defendant.

I conclude the state double jeopardy clause demands the affirmance rather than the reversal of the court of appeals' decision upholding the trial court's dismissal of the criminal complaint in this case. I therefore respectfully dissent from that portion of the majority opinion.

I further believe that the due process clauses of both the state and federal constitutions prohibit the result which follows from the majority holding. "Fair play is an important factor in the consideration of due process of law. Truly, the concern of due process is fundamental fairness." *State ex rel. Lyons v. De Valk,* 47 Wis. 2d 200, 205, 177 N.W.2d 106 (1970). (Footnote omitted.) Fairness in the legal process is usually not difficult to recognize, although it may sometimes be difficult to explain. The procedure followed by municipal and state authorities in the instant case is completely devoid of the requisite fairness.

On June 12, 1983, Kramsvogel, through his conduct, allegedly violated both municipal and state law. The municipality's charging authorities elected to cite him for this conduct under its municipal ordinance. Kramsvogel, believing he was answering for all the unlawful conduct incident to the day's events, pled guilty and was assessed a forfeiture. The very next day the State brought a criminal complaint charging a violation of a state criminal statute, a complaint based on the *very same conduct* he thought he had answered for the day

before. The record is silent as to whether he was warned at the time of pleading to the municipal citation that subsequent state criminal charges could be brought against him for the same conduct; we must presume he was not.

I would hold that this chain of events is violative of substantive due process. I am further concerned with the status of Kramsvogel's civil conviction in the subsequent criminal proceeding against him. Can this conviction, a matter of public record, be entered as State's evidence in the subsequent criminal case? At what point is the constitutional protection against self-incrimination implicated? Should Kramsvogel have been advised of his right to remain silent and his right to the assistance of legal counsel before pleading to the charges contained in the municipal citation? Though the majority leaves these important questions unanswered these questions are at the heart of due process.

There are no hard and fast rules concerning the specific procedures required to ensure adequate due process in every case. *Communications Comm'n v. WJR,* 337 U.S. 265, 275 (1949). "The Fifth Amendment guarantees no particular form of procedure; it protects substantial rights." *Labor Board v. Mackay Co.,* 304 U.S. 333, 351 (1938). I believe that, at a minimum, Kramsvogel had the right to know at the time of his pleading to the municipal citation that he continued to be subject to state criminal charges for the same conduct. This court has noted, moreover, that municipal and state authorities have "the duty to correlate the[ir] prosecutions so as not to offend the constitutional double jeopardy provisions." *Ramirez* at 153.

Because in this case these authorities failed to inform the defendant of his subsequent exposure to the state criminal complaint and did not correlate their prosecutions so as not to offend the Wisconsin Constitution, their procedure was fundamentally unfair to Krams-

vogel. Municipal and state law enforcement officials can, and normally do, cooperate. For example, in 1974 the Wisconsin municipality of Brookfield had an ordinance prohibiting the same conduct which violated sec. 161.41 (3), Stats., (dealing with possession of a controlled substance). *State v. Karpinski,* 92 Wis. 2d 599, 285 N.W.2d 729 (1979). In *Karpinski,* this court approvingly set out the procedure that Brookfield and state authorities followed in that case when faced with circumstances similar to those presented here:

"[W]hen a person is arrested for possession of marijuana in the city of Brookfield, the procedure followed by the police is that the matter is referred to the Waukesha county district attorney for review. The Waukesha county district attorney decides whether a criminal prosecution should be initiated. If the Waukesha county district attorney determines that there should be a criminal prosecution, the case remains in the district attorney's office. If the Waukesha county district attorney decides not to prosecute, the case is referred to the office of Brookfield's city attorney. The Brookfield city attorney then determines whether there should be a prosecution under the city ordinance." *Id.* at 612.

Finally, dismissing the State's complaint would have salutary effects beyond the immediate benefit to Kramsvogel in this case. The court of appeals, in the closing paragraph of its unpublished opinion, quoted the closing paragraph of the trial court's decision. It bears repeating here:

"It would appear to this Court that in the interest of good criminal administration, municipal law enforcement agencies should yield to State prosecutors matters which apparently or arguably contain complaints of conduct of criminal behavior. They should not preempt prosecution by the issuance of a municipal ordinance citation thus frustrating attempts by the district attorney later to prosecute under state law."

In the interest of individual justice, and in the interest of the orderly administration of our criminal justice system, I would affirm the court of appeals' decision upholding the dismissal of the criminal complaint against Kramsvogel in this case.