E. MICHAEL McCANN, District Attorney Milwaukee County
The Milwaukee County Board is contemplating enacting a County Fair Housing Ordinance. The ordinance would prohibit discrimination in housing based upon "presence of children in household, sex, race, color, handicap, religion, national origin, sex or marital status of the person maintaining a household, lawful source of income, age, ancestry or sexual orientation as defined in Section 111.32 (13m), Wis. Stats." Apparently, most cities and villages in Milwaukee County have previously enacted their own fair housing ordinances. In regard to this proposed ordinance, you ask three questions which I set forth and address below.
 1. May Milwaukee County adopt and enforce a fair housing ordinance in those municipalities within the county which have enacted their own fair housing ordinances?
Shortly after you posed this question to me, the Legislature acted to amend section 66.432 (2), Stats., in the 1985 budget bill. On July 17, 1985, the Governor signed the budget bill making the amendment law. The amendment added counties to the list of municipalities which may enact fair housing ordinances under the authority granted in section 66.432. 1985 Wisconsin Act 29, sec. 1206m. It eliminated from section 66.432 (2) the provision which only allowed counties to adopt fair housing ordinances under sections 59.07 (11) and 66.433. This is a significant change because the unamended version of section 66.432 required considerable prior *Page 235 
cooperation by cities, towns and villages before a county could adopt and enforce a county fair housing ordinance.
By placing counties in the same clause as other municipalities, the Legislature has bestowed on counties the same authority to adopt fair housing ordinances under section 66.432 as is enjoyed by other municipalities. There is nothing in the statute to indicate that the Legislature intended that county ordinances should take precedence over or be subordinate to ordinances enacted by municipalities located within the county.
By contrast, in other areas, the Legislature has expressly limited or prohibited county authority. For example, the Legislature has provided that some types of county ordinances and codes shall not apply in cities or villages, if such municipalities have adopted ordinances or codes on the same subject matter. E.g., sec. 59.07 (18), (49), (50) and (51), Stats. The Legislature has also flatly precluded counties from enforcing some types of ordinances in cities or villages. E.g., sec. 59.07 (69), Stats.
It is my opinion that when the Legislature authorizes a county to adopt an ordinance, the county is not precluded from enforcing the ordinance in cities, towns and villages within the county unless there is specific statutory language to the contrary or unless such enforcement would be inconsistent with the intent of the legislation. Therefore, I believe that Milwaukee County may adopt and enforce a fair housing ordinance in those municipalities within the county which have enacted their own fair housing ordinance.
 2. If the county may adopt and enforce a fair housing ordinance in those local municipalities within the county which have enacted their own fair housing ordinances, would a double jeopardy problem arise if both the county and a municipality therein sought enforcement in connection with a single act of alleged housing discrimination?
The fifth amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution protects persons against multiple criminal prosecutions. This protection is commonly referred to as the protection against "double jeopardy."
Double jeopardy protection does not apply to multiple municipal actions unless more than one action is a criminal proceeding and results in a criminal punishment. State v. Kramsvogel,124 Wis.2d 101, 109, 369 N.W.2d 145 (1985). Furthermore, since a municipal *Page 236 
ordinance is not a state law, a violation of such ordinance does not constitute a crime if the ordinance violation is punishable only by a forfeiture. Kramsvogel, 124 Wis.2d at 116. Therefore, the answer to your second question depends upon the penalty terms of the ordinances in a particular case
I observe that the penalty section of the proposed Milwaukee County Fair Housing Ordinance allows only a forfeiture. The proposed forfeiture amounts are not less than $100 nor more than $1,000 for a first violation and not less than $1,000 nor more than $10,000 for a second violation within five years. Hence, the prohibition against double jeopardy would not bar Milwaukee County from enforcing the proposed fair housing ordinance if it is adopted with this forfeiture section.
 3. Does the proposed ordinance exceed the authority granted in section 66.432, because it prohibits discrimination on the basis of "presence of children in household?"
Section 66.432 (2) authorizes municipal ordinances prohibiting housing discrimination "solely on the basis of sex, race, color, physical condition, developmental disability as defined in s.51.01 (5), sexual orientation, religion, national origin or ancestry." It further states that:
 Such an ordinance may be similar to s. 101.22 or may be more inclusive in its terms or in respect to the different types of housing subject to its provisions, but any such ordinance establishing a forfeiture as a penalty for violation shall not be less than the statutory forfeitures under s. 101.22.
Sec. 66.432 (2), Stats.
The fair housing ordinance proposed in Milwaukee County contains five bases of prohibited discrimination found in section 101.22, but not specified in section 66.432. These bases are age, handicap, sex or marital status of the person maintaining a household, and lawful source of income. Ordinances adopted under section 66.432 (2) may include all bases of discrimination listed in section 101.22, even though not specified in section 66.432, because section 66.432 (2) states that a local ordinance "may be similar to s. 101.22 . . . ."
I note parenthetically that the word "solely" in section 66.432(2) does not limit municipal ordinances to only those bases enumerated *Page 237 
in section 66.432 (2). The Legislature chose the phrase "solely on the basis of" and not "solely on the bases of." Therefore, the common sense reading of the word "solely" is that it modifies each basis individually and not the listed bases as a group. This construction is consistent with the use of these terms in sections 101.22 (1m)(a) and 111.31 (1).
It is my opinion that local ordinances adopted under section 66.432 (2) may also prohibit bases of discrimination not listed in section 66.432 or section 101.22. Section 66.432 (2) states that a municipal fair housing ordinance "may be similar to s. 101.22 or may be more inclusive in its terms or in respect to the different types of housing subject to its provisions . . . ." The phrase "more inclusive in its terms" must have meaning. It is a cardinal rule of statutory construction that no statutory word or clause shall be rendered surplusage. Garfield v. United States,297 F. Supp. 891 (W.D. Wis. 1969); Kollasch v. Adamany,104 Wis.2d 552, 563, 313 N.W.2d 47 (1981). The question then is: what are the "terms" in section 101.22 with respect to which a local fair housing ordinance may be "more inclusive"?
Civil rights statutes are considered to be remedial in nature and are to be construed liberally in favor of coverage to effectuate the constitutional mandate against discrimination. 14 C.J.S. Supp. Civil Rights § 10 (1985). Liberal construction of statutes consists of giving words meaning which render them effective to accomplish the legislative intent which the statute discloses. State ex rel. Mueller v. School District Board,208 Wis. 257, 260, 242 N.W. 574 (1932). Words undefined within statutes are to be construed according to their common and approved usage unless such construction would produce a result inconsistent with the manifest intent of the legislation. Sec.990.01 (1), Stats. In determining legislative intent, it is appropriate to consider the language in the statute and other statutes dealing with the same subject matter Kollasch,104 Wis.2d at 563.
Section 66.432 (1) states that housing discrimination is a problem of "local interest." It further states that:
 [T]he enactment of s. 101.22 by the legislature shall not preempt the subject matter of equal opportunities in housing from consideration by local governments, and shall not exempt cities, villages, towns and counties from their duty, nor deprive them of *Page 238 
their right, to enact ordinances which prohibit discrimination in any type of housing solely on the basis of sex, race, color, physical condition, developmental disability as defined in s. 51.01 (5), sexual orientation, religion, national origin or ancestry.
In section 101.22 (1) the Legislature declared that "it is the duty of the local units of government to assist in the orderly prevention or removal of all discrimination in housing through the powers granted under s. 66.433." The Legislature's recognition that different localities may have differing problems related to discriminatory practices is reflected in section 66.433, the Wisconsin Bill of Human Rights. In section 66.433, cities, towns, villages and counties are expressly "authorized and urged" to establish or participate in a "community relations-social development commission," whose purpose is:
 [T]o study, analyze and recommend solutions for the major social, economic and cultural problems which affect people residing or working within the municipality including, without restriction because of enumeration, problems of the family. youth, education, the aging, juvenile delinquency, health and zoning standards, and discrimination in housing, employment and public accommodations and facilities on the basis of sex, class, race, religion, sexual orientation or ethnic or minority status.
Sec. 66.433 (3)(a), Stats. This is a clear legislative expression of intent that communities may have differing problems which should be addressed at the local level.
Applying the above principles of construction and legislative intent leads to the conclusion that the word "terms" in section 66.432 (2) should be construed to allow municipalities to deal with their particular problems regarding housing discrimination. Nothing in section 66.432 indicates that the phrase "more inclusive" applies only to certain types of terms in section 101.22.
However, the question remains whether municipalities can prohibit housing discrimination specifically on the basis of "presence of children in [a] household." Although municipalities would appear to have the authority under section 66.432 to prohibit such discrimination, I conclude that the unique legislative and administrative history of that section results in substantial uncertainty regarding the municipalities' authority to prohibit discrimination on the basis of presence of children in [a] household." *Page 239 
You have suggested that "presence of children in household" is properly included in the proposed ordinance because it is a particularization of the term "age" in section 101.22. There is some merit to this proposition. Since it can be argued that when landlords or sellers deny housing because of the presence of children in a household, they effectively deny housing to children based upon their age.
However, a review of legislative history and administrative agency action persuades me that the Legislature did not intend the inclusion of "age" to be a protection against housing discrimination for families with children. The Legislature has at least twice rejected attempts to add language to section 101.22 which would explicitly protect children in families. In 1965, when section 101.22 was created, an amendment was rejected by the Assembly which would have added "age" and "number of children in family" to the list of prohibited bases of housing discrimination. Assembly Amendment 1 to Senate Amendment 5 to 1965 Assembly Bill 852; Assembly Bulletin of the Proceedings of the Wisconsin Legislature, 1965 session, p. 523. Neither basis was added to the then newly created section 101.22.
In 1979, "age" was added to section 101.22, but during the same session, the Senate declined to add "parental status" as an independent basis of prohibited discrimination. Assembly Amendment 5 to 1979 Senate Bill 244; Senate Bulletin of the Proceedings of the Wisconsin Legislature, 1979 session, p. 177.
I cannot say from this that the Legislature did not intend that the term "age" cover "presence of children in household." It can only be said that the Legislature did not explicitly protect families with children when it had an opportunity to do so. The failure of bills to become law often has nothing to do with the bills' content. American Motors Corp. v. ILHR Dept.,101 Wis.2d 337, 349, 305 N.W.2d 62 (1981).
I find it more significant that the administrative agency charged with administering section 101.22 has taken action to interpret the term "age" as being limited to persons eighteen years of age or older. A course of administrative interpretation may be used to supplement a statutory provision. American Motors,101 Wis.2d at 353. A clear source of administrative interpretation is an agency's *Page 240 
exercise of its rule-making power. Rule-making power is subject to legislative oversight and when a rule is promulgated and not suspended or set aside on legislative review under section 13.56, the rule is some evidence that the Legislature has acquiesced in the agency's interpretation of the statute. American Motors,101 Wis.2d at 354-55.
In this case the agency charged with implementing section 101.22 is the Department of Industry, Labor and Human Relations. Under the authority granted in section 101.22(3), the department has promulgated chapter Ind 89 of the Wisconsin Administrative Code entitled "Equal Opportunities, Fair Housing," for the purpose of administering the state fair housing statute.
In 1981, the department adopted section Ind 89.01 (2) of the Wisconsin Administrative Code which states that "`[a]ge' in reference to protected classes of persons covered by the act [section 101.22] means 18 years of age or older." Since the Legislature has acquiesced in this definition of "age" for purposes of housing discrimination, I must conclude that it did not intend to protect families with children when it included "age" in section 101.22.
In summary, the Legislature has at least twice rejected amendments which would have specifically extended coverage of the Fair Housing Act to children in households and the agency charged with administering the Act has defined age to include all persons except minors. In my opinion, this legislative and administrative history not only makes it clear that the prohibition against age discrimination does not cover children in a household, but also raises serious doubts as to whether a county can extend fair housing protection to this group.
Therefore, I conclude as a general proposition that municipal ordinances may contain bases of discrimination "more inclusive" than the bases of discrimination listed in sections 66.432 and 101.22. However, I would be remiss if I did not qualify this opinion by stating that courts might well strike down a provision prohibiting discrimination on the basis of "presence of children in [a] household" because of the unique legislative and administrative history discussed above.
BCL:PL *Page 241