STATE of Wisconsin, Plaintiff-Respondent,

v.

Timothy A. LAWTON, Defendant-Appellant.

Court of Appeals

*No. 91–0483–CR. Submitted on briefs October 8, 1991.—Decided February 27, 1992.*

(Also reported in 482 N.W.2d 142.)

For the defendant-appellant the cause was submitted on the briefs of *James H. Connors* and *Scott B. Edwards* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general and *Sharon Ruhly,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J.   While traveling eastbound on a state highway, Timothy Lawton fell asleep at the wheel of his vehicle. The vehicle drifted into the westbound lane and collided with a motorcycle, killing both riders. Lawton was issued a traffic citation for operating a

motor vehicle while intoxicated (OMVWI) as a first offender, contrary to sec. 346.63(1)(a), Stats. The district attorney subsequently charged Lawton with two counts of homicide by intoxicated use of a motor vehicle, contrary to sec. 940.09(1)(a), Stats., and two counts of homicide by use of a motor vehicle while having a blood alcohol concentration of 0.1% or more, contrary to sec. 940.09(1)(b), Stats.

Lawton pled no contest to the first offender OMVWI charge. He then moved to dismiss the homicide charges, arguing that the prosecution was barred by double jeopardy. The trial court denied Lawton's motion, reasoning that the OMVWI prosecution constituted a civil, rather than criminal, proceeding. We granted Lawton leave to appeal from the nonfinal order, and we now affirm.

## I. DOUBLE JEOPARDY

A criminal defendant is protected against being placed twice in jeopardy by the fifth amendment to the United States Constitution and article I, section 8, of the Wisconsin Constitution.[1] The United States Supreme Court has interpreted the double jeopardy clause as

[1]The fifth amendment to the United States Constitution provides in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Article I, section 8 of the Wisconsin Constitution provides in part, "no person for the same offense may be put twice in jeopardy of punishment." The federal prohibition against double jeopardy applies to the state through the due process clause of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969). Decisions of the United States Supreme Court govern both provisions. *State v. Rabe,* 96 Wis. 2d 48, 61–62 n.7, 291 N.W.2d 809, 815–16 n.7 (1980); *State v. Harris,* 161 Wis. 2d 758, 760, 469 N.W.2d 207, 208 (Ct. App. 1991).

embodying a triumvirate of safeguards, protecting a defendant against: (1) a second prosecution for the same offense following acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969); *United States v. Mena,* 933 F.2d 19, 29 (1st Cir. 1991). This case implicates the second protection—prosecution after conviction for the same offense. *See Ohio v. Johnson,* 467 U.S. 493, 498–99 (1984).

The prohibition on successive prosecutions protects "the defendant from multiple trials and multiple punishments for the same offense" and preserves "the finality of judgments." *State v. Martin,* 121 Wis. 2d 670, 675, 360 N.W.2d 43, 46 (1985).

> The underlying idea . . . is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88 (1957). Multiple prosecutions also "give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged." *Grady v. Corbin,* 495 U.S. 508, 518 (1990) (citations omitted).

*A.  Double Jeopardy Challenges in the Civil/Criminal Contest*

In case law culminating with *United States v. Halper,* 490 U.S. 435 (1989), the United States Supreme Court has employed a specific analysis to determine whether a penalty is civil or criminal for purpose of double jeopardy. In *Helvering v. Mitchell,* 303 U.S. 391 (1938), the defendant was acquitted of income tax fraud. The government then brought a civil action to recover the tax deficiency plus an additional fifty percent statutory penalty for fraud. The defendant argued that the civil action subjected him to double jeopardy because the statutory penalty was intended as a punishment rather than a tax. *Id.* at 395–98.

The Court disagreed, holding that "[u]nless this sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for the defendant in criminal prosecutions is not applicable," *id.* at 398–99, and that the question of whether a civil penalty is actually a criminal sanction "is one of statutory construction." *Id.* at 399 (citation omitted); *see, e.g., United States ex rel. Marcus ·v. Hess,* 317 U.S. 537 (1943); *Rex Trailer Co. v. United States,* 350 U.S. 148 (1956).

In *United States v. One Assortment of 89 Firearms,* 465 U.S. 354 (1984), the defendant was acquitted of criminal charges for dealing in firearms without a license. The government then instituted an *in rem* action for forfeiture of the seized firearms. Quoting from its decision in *United States v. Ward,* 448 U.S. 242, 248–49 (1980),[2] the Court delineated a methodology for

[2]In *Ward,* the Court held that a proceeding for the assessment of a civil penalty under the Federal Water Pollution Control

examining double jeopardy challenges in the civil/criminal context:

> Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.

*89 Firearms,* 465 U.S. at 362–63 (citations omitted).

In the recent decision of *United States v. Halper,* 490 U.S. 435 (1989), the Court emphasized the second part of the *Ward* methodology. In *Halper,* the defendant defrauded the government of $585 by filing false Medicare claims. The defendant was convicted of sixty-five counts of violating the criminal false-claims statute. The government then brought an action for statutory penalties in excess of $130,000 under the civil false-claims statute. *Id.* at 437–38.

The *Halper* court observed that, "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* at 448 (citation omitted).

> [T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal

Act was not a "criminal case" under the self-incrimination clause of the fifth amendment. 448 U.S. at 253–55.

sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

*Id.* at 448. The Court found the disparity between the expense to the government and the defendant's $130,000 liability "sufficiently disproportionate that the sanction constitutes a second punishment in violation of double jeopardy." *Id.* at 452.[3]

*Halper* indicates the continuing validity of the methodology employed by the courts in *Mitchell* and *89 Firearms* in examining double jeopardy challenges in the criminal/civil context. These cases "establish that a civil sanction will not trigger an inquiry under the double jeopardy clause unless the statute under which it is imposed is criminal in nature." Elizabeth S. Jahncke, *United States v. Halper, Punitive Civil Fines, and the Double Jeopardy and Excessive Fines Clauses,* 66 N.Y.U. L. Rev. 112, 128 (1991).[4] With this analysis in mind, we reexamine our decision in *State v. Schulz.*[5]

---

[3]The *Halper* court remanded the case to the district court to allow the government "an opportunity to present . . . an accounting of its actual costs arising from Halper's fraud." *Id.* at 452.

[4]For a discussion of the *Mitchell/89 Firearms/Halper* line of cases, *see also* Andrew Z. Glickman, Comment, *Civil Sanctions and the Double Jeopardy Clause: Applying the Multiple Punishment Doctrine to Parallel Proceedings after United States v. Halper,* 76 Va. L. Rev. 1251 (1990); Laureen O. Clapp, Note, *United States v. Halper, Remedial Justice and Double Jeopardy,* 68 N.C. L. Rev. 979 (1990); 3 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 24.1 (1984 & Supp. 1991).

[5]The dissent suggests that the "multiple punishment" analysis applied in *Halper* is inapplicable to "successive prosecution" cases, such as the one at bar. *See* dissent, at 478.

In a "pure" multiple punishment case, i.e., where a defendant

467

## B. State v. Schulz

In *State v. Schulz,* 100 Wis. 2d 329, 302 N.W.2d 59 (Ct. App. 1981), the defendant moved for dismissal of

is subject to multiple punishment for the same offense in a single proceeding, the state need only show that the legislature intended to allow the penalties to be aggregated. *See Missouri v. Hunter,* 459 U.S. 359, 368–69 (1983) ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."); *see also Ohio v. Johnson,* 467 U.S. 493, 499 n.8 (1984); *Halper,* 490 U.S. at 450–51; Jahncke, *supra,* at 138 n.211.

Second, although the Court in *Halper* did characterize that case as one involving "multiple punishments for the same offense," *id.* at 440, it nowhere suggested that the analysis was inapplicable to successive punishment cases. Indeed, the Court, in dicta, blurred considerably whatever distinction it may have intended to make between the two types of cases:

> That the Government seeks the civil penalty in a second proceeding is critical in triggering the protections of the Double Jeopardy Clause . . . .. [W]hen the Government already has imposed a criminal penalty and seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding.

*Id.* at 451 n.10; *see* Jahncke, *supra,* at 135 ("the Court implicitly categorized *Halper* as both a multiple punishment and a successive prosecution case").

Finally, were the dissent's interpretation of *Grady v. Corbin*—that the double jeopardy clause now applies with equal force to civil penalties, regardless of whether they constitute "punishment" under *Halper*—correct, it would represent a substantial shift in double jeopardy jurisprudence.

two charges of homicide by intoxicated use of a motor vehicle, contending that his previous prosecution for a first offender OMVWI arising out of the same incident barred the subsequent prosecution on double jeopardy grounds. *Id.* at 330, 302 N.W.2d at 60. At the time *Schulz* was decided, a first offender of sec. 346.63(1), Stats. (1979-80), was subject to the following penalties: (1) monetary forfeiture of not less than $100 nor more than $500, sec. 346.65(2)(a)1, Stats. (1979-80); (2) license revocation for not less than three months nor more than six months or rehabilitation treatment in lieu of all or part of the revocation, sec. 343.30(1q)(a), (b) and (c), Stats. (1979-80); and (3) compulsory attendance at a driver safety school, sec. 345.60, Stats. (1979-80). In addition, if the offender did not pay the forfeiture, the court could order imprisonment. Section 345.47(1)(a), Stats. (1979-80).

We concluded that the removal by the legislature in 1971 of fines or imprisonment as penalties for violation of sec. 346.63(1), Stats., evidenced "a legislative intent to establish a civil penalty." *Schulz,* 100 Wis. 2d at 331, 302 N.W.2d at 61 (citing sec. 778.01, Stats.[6]). We further concluded that the penalties were not so punitive in purpose or effect to negate the intent of the legislature. We held:

> The potential forfeiture of $500 is not sufficient to trigger the protection of the double jeopardy clause. *See Ward.* Loss of license or the possibility of imprisonment as a means of enforcing the forfeiture is not

[6]Section 778.01, Stats., provides:

Where a forfeiture imposed by statute shall be incurred it may be recovered in a civil action unless the act or omission is punishable by fine and imprisonment or by fine or imprisonment. The word forfeiture, as used in this chapter, includes any penalty, in money or goods.

so punitive as to cause us to conclude that jeopardy should attach. *See State ex rel. Prentice v. County Court,* 70 Wis. 2d 230, 234 N.W.2d 283 (1975); *[State v.] Albright[,* 98 Wis. 2d 663, 298 N.W.2d 196 (Ct. App. 1980)]. The purpose and effect of requiring attendance at a driver safety school is clearly remedial and not punitive.

*Schulz,* 100 Wis. 2d at 331, 302 N.W.2d at 61; *see State v. Kramsvogel,* 124 Wis. 2d 101, 113-120, 369 N.W.2d 145, 150-54, *cert. denied,* 474 U.S. 901 (1985); *State v. Folk,* 117 Wis. 2d 42, 47, 342 N.W.2d 761, 763-64 (Ct. App. 1983).

Lawton asserts that our holding in *State v. Schulz* is no longer good law. To support this contention, he advances two arguments. First, he argues that *Grady v. Corbin,* 495 U.S. 508 (1990), requires a different result. Second, he maintains that, since *Schulz* was decided, the penalties which may be imposed for violating sec. 346.63(1), Stats., have increased in severity to a degree that they can only be fairly characterized as punishment.

## II.  *GRADY V. CORBIN*

In *Grady,* the defendant injured one person and killed another when he drove his vehicle across the median and collided with two oncoming vehicles. He was served with two traffic tickets. The first charged him with driving while intoxicated, a misdemeanor, contrary to N.Y. Veh. & Traf. Law § 1192(3) (McKinney 1986). The second charged him with failing to keep right of the median, a "traffic infraction," contrary to § 1120(a). *See* § 155.[7] The defendant pled guilty to the charges and

---

[7]N.Y. Veh. & Traf. Law § 155 (McKinney 1986) defines a "traffic infraction," in part, as:

The violation of any provision of this chapter, except articles

470

received a minimum sentence. *Grady,* 495 U.S. at 511-13.

Two months later, the defendant was indicted on charges of reckless manslaughter, vehicular manslaughter, negligent homicide and reckless assault, stemming from the same accident. *Id.* at 513. The New York Court of Appeals held that the second prosecution was barred by double jeopardy because the State intended to rely upon the fact that the defendant was intoxicated and that he crossed the median to prove the felony charges, 543 N.E.2d 714, 719-20 (N.Y. 1989), and the United States Supreme Court affirmed. 495 U.S. at 522-24.

The *Grady* Court again relied upon the use, as a threshold inquiry, of the test articulated in *Blockburger v. United States,* 284 U.S. 299 (1932), to determine whether the offenses were the same for double jeopardy purposes. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger* at 304 (citation omitted).

A subsequent prosecution, however, "must do more than merely survive the *Blockburger* test." *Grady,* 495 U.S. at 521. The double jeopardy clause is also implicated in "any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already

forty-seven and forty-eight, or of any law, ordinance, order, rule or regulation regulating traffic which is not declared by this chapter or other law of this state to be a misdemeanor or a felony. A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment . . ..

471

been prosecuted." *Id.* (footnote omitted).[8]

Lawton argues that, by allowing jeopardy to attach to a "civil" violation—the "traffic infraction" in *Grady*—the Supreme Court has blurred the distinction between criminal and civil penalties and signalled its intention to broadly apply double jeopardy protection to both. We disagree. We do not read *Grady* as abrogating the distinction between criminal and civil sanctions. Nor do we believe the *Grady* Court intended to discard the civil/criminal methodology to determine whether a civil sanction is, in reality, a punishment.

Our interpretation is supported by decisions from other jurisdictions. In *Taylor v. Sherrill*, 819 P.2d 921 (Ariz. 1991), the defendant was cited for violating three civil traffic laws (speeding, unsafe turn, and failure to provide proof of insurance). After the defendant failed to appear at a pretrial hearing, the trial court entered default judgments against him for the speeding and unsafe turn violations. *Id.* at 923.

The defendant was subsequently convicted of numerous criminal charges stemming from the accident. He moved to dismiss some of the criminal charges "because the default civil judgments for speeding and unsafe turn had already placed him in jeopardy." *Id.* at 923. The Arizona Court of Appeals agreed, noting that, "[i]n *Grady*, jeopardy was held to attach to a 'civil' traffic

---

[8]The *Grady* decision has been the subject of extensive commentary. *See* James M. Herrick, Comment, *Double Jeopardy Analysis Comes Home: The "Same Conduct" Standard in Grady v. Corbin,* 79 Ky. L.J. 847 (1991); Craig J. Webre, Comment, *Grady v. Corbin: Successive Prosecutions Must Survive Heightened Double Jeopardy Protection,* 36 Loy. L. Rev. 1171 (1991); Sara Burton, Comment, *Grady v. Corbin, An Unsuccessful Effort to Define "Same Offense,"* 25 Ga. L. Rev. 143 (1990).

violation under the New York Code. That charge, crossing the center line, is hardly distinguishable from charges of unsafe turning or even speeding." 802 P.2d 1058, 1062 (Ariz. Ct. App. 1990).

Vacating the appellate court's decision, the Arizona Supreme Court held:

> [W]e think it highly unlikely that the Supreme Court would depart from the well-settled principle, in multi-prosecution analysis, that "the risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not 'essentially criminal,' " *Breed v. Jones,* 421 U.S. 519, 528, 95 S. Ct. 1779, 1785, 44 L. Ed. 2d 346 (1975) (quoting *Helvering v. Mitchell,* 303 U.S. 391, 398, 58 S. Ct. 630, 633, 82 L. Ed. 917 (1938), without explicitly saying so.

819 P.2d at 926 (citation omitted).

Similarly, in *Purcell v. United States,* 594 A.2d 527 (D.C. 1991), the defendant moved to dismiss, on double jeopardy grounds, an indictment for negligent homicide because he had already been subject to a hearing and paid a fine for traffic citations arising from the same incident. *Id.* at 527–28. The court rejected the motion, concluding that because the traffic offenses were civil violations, the case was "beyond the reach of *Grady v. Corbin.*" *Id.* at 529.

We are troubled by the fact that one of the offenses for which the defendant in *Grady* was charged involved a civil "traffic infraction." However, we do not interpret *Grady* as discarding, *sub silentio,* the civil/criminal methodology that the Court has developed, culminating in *United States v. Halper,* and substituting in its place an as-yet-undefined, but certainly less strict, analysis for applying the double jeopardy clause to civil penalties. Like the court in *Taylor,* we believe that if the Court

473

intended to restrict or overrule the *Mitchell/89 Firearms/Halper* line of cases, it would have manifested this intent "explicitly."

## III.   SECTION 346.63(1), STATS.

██ Lawton argues that, even assuming the *Ward* civil/criminal analysis is still applicable, the severity of the penalties under sec. 346.63(1), Stats., have increased since *Schulz* to a degree that they now constitute punishment for the purpose of double jeopardy. A first offender of sec. 346.63(1) is currently subject to the following sanctions: (1) monetary forfeiture of not less than $150 nor more than $300, sec. 346.65(2)(a), Stats.; (2) license revocation for not less than six months nor more than nine months, sec. 343.30(1q)(b)2, Stats.; (3) mandatory participation in an alcohol assessment and driver safety program, sec. 343.30(1q)(c) and (d), Stats.; and (4) performance of community service, sec. 346.65(2g), Stats. In addition, the offender may be incarcerated for nonpayment of the forfeiture until it is paid, for a period not to exceed ninety days, sec. 345.47(1)(a), Stats.

We note, first, that since *Schulz* was decided, the maximum monetary forfeiture has *decreased*, from $500 to $300. In addition, one cannot seriously contend that compelled participation in alcohol assessment and driver safety programs serves no remedial function. "[T]he process of assessing and rehabilitating the offender is separate and distinct from the penalty process." Thomas J. Hammer, *The New OMVWI Law: Wisconsin Changes its Approach to the Problem of Drinking and Driving,* 55 Wis. Bar. Bull. 9, 11 (April 1982). Nor do we believe that increasing the maximum license revocation period from six months to nine months renders that penalty "over-

whelmingly disproportionate" to the offense. *United States v. Halper,* 490 U.S. at 449.

To support his argument that the penalties for a first offender OMVWI are punishment, Lawton relies principally upon the fourth penalty—the performance of community service. He argues that community service only serves as "a form of payment back to society." We disagree. Community service, particularly when it involves tasks such as emergency room assistance, can further rehabilitative goals.

We conclude that the first offender OMVWI prosecution in the instant case was a civil, rather than criminal, proceeding, and that jeopardy did not attach.

*By the Court.*—Order affirmed.

SUNDBY, J. *(dissenting).* The penalty for violation of numerous statutes is a civil forfeiture. Cities, villages, towns and counties adopt many state statutes by ordinance, *see* sec. 66.051, Stats. (power of municipalities to prohibit criminal conduct), and impose civil forfeitures for violation of those ordinances. Therefore, our decision herein which permits the state to prove a necessary element of a criminal offense by showing conduct for which the defendant has been prosecuted civilly is very significant. Because of the impact of our decision, especially on prosecutors and trial courts, *see* Anne B. Poulin, *Double Jeopardy: Grady* and *Dowling Stir the Muddy Waters,* 43 Rutgers L. Rev. 889, 927–930 (1991), I would certify this appeal to the Wisconsin Supreme Court. If we do not, I conclude that *Grady v. Corbin,* 495 U.S. 508 (1990) requires that we grant the defendant's motion to dismiss this action because the state proposes to convict the defendant of two counts of homicide by the intoxicated use of a motor vehicle by showing conduct—operating

475

while under the influence—for which he has been prosecuted and convicted. I therefore respectfully dissent.

Prior to *Grady,* it was widely assumed that the double jeopardy clause of the Fifth Amendment[1] did not bar a subsequent criminal prosecution of a defendant for °conduct for which the defendant had been prosecuted in a civil proceeding.[2] Under the double jeopardy clause, it was thought that the conduct subject to a civil penalty was simply not the "same offence" as that subject to a criminal penalty. "[T]he risk to which the [Double Jeopardy] Clause refers is not present in proceedings that are not 'essentially criminal.' " *Breed v. Jones,* 421 U.S. 519, 528 (1975) (quoting *Helvering v. Mitchell,* 303 U.S. 391, 398 (1938)). *Grady* has dispelled previous assumptions as to the reach of the double jeopardy clause in successive-prosecution cases.[3]

---

[1]The double jeopardy clause states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amdt V. It is enforceable against the States through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969).

[2]In *State v. Kramsvogel,* 124 Wis. 2d 101, 369 N.W.2d 145, *cert. denied,* 474 U.S. 901 (1985), a divided court held that the double jeopardy clause did not bar a state criminal prosecution for the same conduct for which the defendant had been prosecuted under a municipal ordinance.

[3]*Grady v. Corbin,* 495 U.S. 508 (1990), has evoked a storm of judicial activity and interpretative commentary. Despite its recentness, *Grady* has been cited in numerous decisions and has been the subject of a number of commentaries: Anne B. Poulin, *Double Jeopardy: Grady* and *Dowling Stir the Muddy Waters,* 43 Rutgers L. Rev. 889 (1991); Note, *Increased Double Jeopardy Protection for the Criminal Defendant: Grady v. Corbin,* 27 Willamette L. Rev. 913 (1991); James M. Herrick, Comment, *Double Jeopardy Analysis Comes Home: The "Same Conduct" Standard in Grady v. Corbin,* 79 Ky. L.J. 847 (1990–91); Lori A. McGinnis,

The double jeopardy clause embodies three protections: protection against a second prosecution for the same offense after acquittal; protection against a second prosecution for the same offense after conviction; and protection against multiple punishments for the same offense. *Grady,* 495 U.S. at 516. *Grady* and the instant case present a second prosecution after conviction. In *Grady,* the Court held that the double jeopardy clause barred a subsequent prosecution for vehicular homicide and assault where the prosecutor intended to prove as elements of the crimes conduct constituting previously prosecuted traffic offenses. One of the traffic offenses was failing to keep to the right of the median, which under New York law was not a crime and for which the penalty was not punishment. N.Y. Veh. & Traf. Law § 155 (McKinney 1986).

The majority is "troubled," maj. op. at 473, by the fact that one of the prior offenses for which the defendant in *Grady* was convicted was a civil traffic infraction. The majority assumes that the *Grady* Court simply overlooked this fact. The majority cites *Taylor v. Sherrill,* 819 P.2d 921 (Ariz. 1991), where the court held that the "key element," *id.* at 926, of *Grady* was the Supreme Court's erroneous assumption that the initial proceedings were a "prosecution." I suggest that the *Grady* Court did not overlook the fact that the prosecutor intended to prove vehicular homicide and assault by showing that Corbin had caused the fatal accident by

Casenote, *Grady v. Corbin: Doubling the Scope of the Double Jeopardy Clause?* 17 Ohio N.U. L. Rev. 873 (1991); Sara Barton, Case Comment, *Grady v. Corbin: An Unsuccessful Effort to Define "Same Offense,"* 25 Ga. L. Rev. 143 (1990); Craig J. Webre, Casenote, *Grady v. Corbin: Successive Prosecutions Must Survive Heightened Double Jeopardy Protection,* 36 Loy. L. Rev. 1171 (1991).

crossing the median. I further suggest that the majority herein, and the Arizona court, have failed to appreciate that *Grady* was a successive-prosecution, not a multiple-punishment, case. I conclude that the *raison d'etre* of *Grady* is that the double jeopardy clause prevents the state from "rehears[ing] its presentation of proof," 495 U.S. at 518, "honing its trial strategies and perfecting its evidence," *id.* (quoting *Ashe v. Swenson,* 397 U.S. 436, 447 (1970)), by prosecuting a lesser offense in anticipation of its prosecution of a more serious offense. The *Grady* majority was satisfied that a civil traffic offense was the "same offence" as a more serious criminal offense for such "rehearsal" purposes.

Writing for the majority, Justice Brennan began by explaining that the traditional *Blockburger [v. United States,* 284 U.S. 299 (1932)] test was developed "in the context of multiple punishments imposed in a single prosecution." *Grady,* 495 U.S. at 516 (quoting *Garrett v. United States,* 471 U.S. 773, 778 (1985)). If the *Blockburger* test reveals that two offenses have identical statutory elements or that one is a lesser included offense of the other, a subsequent prosecution is barred. *Id.* (citing *Brown v. Ohio,* 432 U.S. 161, 166 (1977)).

Justice Brennan concluded that "a subsequent prosecution must do more than merely survive the *Blockburger* test." *Grady,* 495 U.S. at 521. Justice Scalia, dissenting, contended that *Blockburger* was the exclusive definition of "same offence" in the double jeopardy clause. *Id.* at 528–30 (citing cases). Justice Brennan responded that in each of the cases cited by Justice Scalia, the *Blockburger* test was applied to determine the permissibility of cumulative punishments. *Id.* at 517 n.8. He said: "None of the cases even suggests that *Blockburger* is the exclusive definition of 'same offense' in the

478

context of successive prosecutions."[4] *Id.* Justice Brennan stated that "[s]uccessive prosecutions . . . whether following acquittals or convictions, raise concerns that extend beyond merely the possibility of an enhanced sentence." *Grady,* 495 U.S. 518 (footnote omitted). These concerns include that the state will use its resources and power "to make repeated attempts to convict an individual for an alleged offense . . .." *Id.* (quoting *Green v. United States,* 355 U.S. 184, 187 (1957)).

One commentator criticizes Justice Brennan for relying on post-acquittal cases, such as *Green,* in analyzing a post-conviction case. Poulin, 43 Rutgers L. Rev. at 908. However, Justice Brennan correctly pointed out that if *Blockburger* constituted the entire double jeopardy inquiry in successive-prosecution cases, the state could have tried the defendant in four consecutive trials: for failure to keep right of the median, for driving while intoxicated, for assault, and for vehicular homicide.

---

[4]The majority complains that *I* suggest that the definition of "same offence," found in the Court's multiple-punishment cases, is inapplicable to a successive-prosecution case. It is not I who makes that suggestion but the majority of the Court in *Grady. See* 495 U.S. at 517 n. 8.

The majority yearns to return to the good old days recalled by Justice Scalia when the *Blockburger* test provided the exclusive definition of "same offence" under the double jeopardy clause. However, *Grady* is the latest pronouncement of double jeopardy law in successive-prosecution cases and we must try to understand and follow it. The majority does not further that effort by relying on the discredited and discarded "civil/criminal methodology" (maj. op. at 4–5) in deciding successive-prosecution cases. *See United States v. Halper,* 490 U.S. 435, 447 n.7 (1989) ("[I]n determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated").

*Grady,* 495 U.S. at 520. Regardless of the outcome of any one trial, "[t]he State could improve its presentation of proof with each trial, assessing which witnesses gave the most persuasive testimony, which documents had the greatest impact, which opening and closing arguments most persuaded the jurors." *Id.* at 520–21. In any instance in which the defendant's conduct is subject to a penalty in a civil proceeding and also to penalty in a criminal proceeding, the temptation is present to use the less serious charge as a tryout for the main event. I conclude that *Grady* holds that the double jeopardy clause forbids such unfair conduct in successive-prosecution cases.

We need not decide in this case whether the double jeopardy clause forbids the state from using in a criminal prosecution proof of conduct which the state has used to subject the defendant to a civil remedial sanction. The civil penalty imposed against the defendant herein serves the purposes of punishment at least as fully as the penalty to which the defendant in *Grady* was subjected for violating the New York Vehicle and Traffic Law. In fact, the New York statute expressly disclaimed that the penalty for its violation was punishment. We must assume that the *Grady* majority was satisfied that the defendant's traffic offense was sufficiently similar to the subsequent criminal proceeding that it constituted the "same offence" under the double jeopardy clause. Therefore, *Grady* extends the protection of the double jeopardy clause to the second prosecution of the defendant herein after his conviction for operating a motor vehicle while under the influence of an intoxicant.

This extension is not as broad a leap as the majority suggests. We have held:

> Because civil forfeitures are not crimes, sec. 939.12, Stats., the constitutional prohibition against multi-

plicity derived from the double jeopardy clause is not directly controlling. However, a similar analysis may be used. A person cannot be subject to a double forfeiture if his conduct constituted a single violation, even if his conduct is not a crime.

*State v. Braun,* 103 Wis. 2d 617, 630, 309 N.W.2d 875, 882 (Ct. App. 1981). It would be anomalous if a defendant who could not be subject to a double forfeiture for the same conduct could be subject to a civil forfeiture *and* a criminal penalty for the same conduct. *See State v. Kramsvogel,* 124 Wis. 2d 101, 124, 369 N.W.2d 145, 156 (1985) (Abrahamson, J., dissenting).

I anticipate the argument that one of the traffic offenses for which the defendant had been prosecuted in *Grady*—driving while intoxicated—was a misdemeanor and thus, it was not necessary to address the effect of the civil traffic infraction. This argument fails because the Court considered that "the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated *and failing to keep right of the median*—to establish essential elements of the homicide and assault offenses. Therefore, the Double Jeopardy Clause bars this successive prosecution . . .." 495 U.S. at 523 (emphasis added).

If I have misread *Grady* and the "civil/criminal methodology" still controls in successive-prosecution cases, I reach the same result because the civil forfeiture for operating a motor vehicle while under the influence, first offense, constitutes "punishment." In *United States v. Halper,* 490 U.S. 435, 448 (1989), the Court said: "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." The Court also added that "[r]etribution and deterrence are

481

not legitimate nonpunitive governmental objectives." *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 539 n.20 (1979)).

The state cites Thomas J. Hammer,[5] *The New OMVWI Law: Wisconsin Changes its Approach to the Problem of Drinking and Driving,* 55 Wis. Bar. Bull. 9 (April 1982), 15 (May 1982) in support of its position that the sanctions for an OMVWI first offense are remedial, not punitive. Professor Hammer stated that,

> With the enactment of the new statutes, the legislature has redefined Wisconsin's approach to driver rehabilitation. Under prior law, the offender's participation in an assessment and in a rehabilitative program (or school) could reduce the penalties incurred as a result of conviction.
>
> Under the new laws . . . the process of assessing and rehabilitating the offender is separate and distinct from the penalty process. Participation in an assessment and in a driver safety plan become mandatory and are enforced through the Department of Transportation's power to suspend the operating privilege.

*Id.* at 11 (April 1982).

As Professor Hammer pointed out, the legislature severed the alcohol assessment and driver safety plan from the structure of penalties under the new OMVWI law. He stated: "Under the new legislation, the matter of rehabilitation is separate and distinct from penalization." 55 Wis. Bar. Bull. at 16 (May 1982). If legislative intent remains any part of the double jeopardy analysis,

---

[5]At the time of writing his article, Professor Hammer was a visiting assistant professor of law at Marquette University Law School. Prior thereto, he had served as an assistant district attorney in Milwaukee County for six years, during which he supervised the prosecution of all criminal OMVWI cases in Milwaukee County. 55 Wis. Bar. Bull. at 70 (April 1982).

it must be concluded that the monetary penalties of the OMVWI law, including the forfeiture for a first offense, serve the traditional goals of punishment—retribution and deterrence.

Procedurally, prosecutions to recover forfeitures closely resemble criminal prosecutions. Procedurally, a prosecution for OMVWI, second offense, would differ from a first-offense prosecution only in the state's burden of proof. Forfeiture actions require the entry of criminal-type pleas and the taking of criminal-type verdicts. *State ex rel. Schaeve v. Van Lare,* 125 Wis. 2d 40, 44 n. 3, 370 N.W.2d 271, 274 n.3 (Ct. App. 1985). The required degree of proof—clear and convincing—is not far removed from the criminal burden of proof.

Further, many of the common-law principles developed in the context of criminal proceedings have been applied to civil monetary forfeiture prosecutions. For example, the supreme court has held that the frivolous claims statute, sec. 814.025, Stats., does not apply to a city attorney prosecuting an ordinance violation because application of the statute would interfere with the broad prosecutorial discretion granted the city attorney. *City of Janesville v. Wiskia,* 97 Wis. 2d 473, 483, 293 N.W.2d 522, 527 (1980). The court characterized the city's prosecution as "quasi-criminal."

I recognize that the Wisconsin Supreme Court has held that a city prosecution for disorderly conduct did not bar a criminal prosecution for the same conduct, on either double jeopardy or collateral estoppel grounds. *State v. Kramsvogel,* 124 Wis. 2d 101, 369 N.W.2d 145 (1985). The court, however, based its holding that the multiple prosecutions were not for the "same offence" solely on the *Blockburger* test, which the legislature has codified in sec. 939.71, Stats. *Id.* at 111 n.7, 369 N.W.2d at 149–50 n.7. The "neat, almost mathematical struc-

ture," *id.* at 127, 369 N.W.2d at 157 (Bablitch, J., dissenting), of the majority opinion must be reformulated in light of *Grady*.

Perhaps *Blockburger* should provide the sole test to define "same offence" under the double jeopardy clause. It would be a perversion of the clause to allow a defendant to escape answering for serious offenses solely because he or she has paid a small civil penalty for a minor offense. However, *Grady* is the law and *Blockburger* is not the sole test in successive-prosecution cases.

The evils which motivated the *Grady* majority to expand the "same offence" definition in successive-prosecution cases—principally abuse by the state—can be effectively dealt with under the due process clause, even if *Blockburger* is reinstated as the sole test to define "same offence" under the double jeopardy clause. Successive prosecutions (local forfeiture/state forfeiture; local forfeiture/state criminal; or state forfeiture/state criminal) to punish the same conduct are fundamentally unfair and violate the Fourteenth Amendment to the United States Constitution and art. I, sec. 8 of the Wisconsin Constitution. *See Kramsvogel,* 124 Wis. 2d at 124, 369 N.W.2d at 156 (Abrahamson, J., dissenting); *id.* at 124–25, 133, 369 N.W.2d at 156, 160 (Bablitch, J., dissenting).

*Grady* can be dealt with through appropriate administration responses by prosecutors and trial courts, Poulin, 43 Rutgers L. Rev. at 926–30, but, as Justice Scalia points out in his dissent, *Grady* poses difficulties for trial courts. 495 U.S. at 541. However, until *Grady* is overruled or modified, I conclude that only administrative

responses can prevent unfortunate results such as that which *Grady* requires in this case.

For these reasons, I respectfully dissent.