The STATE of Oklahoma, Appellant,

v.

**Ian Deki KAUBLE, Appellee.**

**No. S–97–436.**

Court of Criminal Appeals of Oklahoma.

Oct. 30, 1997.

Rehearing Denied Dec. 17, 1997.

Richard Stevens, Assistant District Attorney, Trisha Misak, Legal Intern, Norman, for Appellant.

Cindy Foley, Rodney Uphoff, Cody Towns, Legal Intern, Norman, for Appellee.

## *OPINION*

CHAPEL, Presiding Judge.

The State of Oklahoma appeals an order of the Cleveland County District Court dismissing a criminal case on the grounds of double jeopardy. For the reasons set forth below, we now reverse and remand.

On December 26, 1996, Ian Deki Kauble, a University of Oklahoma student, falsely reported a car-jacking to the University of Oklahoma Police Department. On January 15, 1997, the University of Oklahoma [University] instituted a disciplinary proceeding against Kauble charging him with violating

Title 16.1 [1] and 16.25 [2] of the University of Oklahoma Student Code of Responsibility and Conduct for the Norman Campus, 1996–1997, (hereinafter Student Code) based on the false car-jacking report. Kauble negotiated a settlement with the University and pleaded guilty to the charge. The University placed him on disciplinary probation for one year and ordered him to complete 100 hours of community service in the University's Department of Student Support Services. Kauble and the University entered into this agreement on January 24, 1997.

On January 3, 1997, the State of Oklahoma charged Kauble in Cleveland County District Court, Case No. CM–97–20, with the misdemeanor offense of false reporting of a crime, in violation of 21 O.S.1991, § 589. In late March 1997, the defense moved to dismiss the criminal case. The defense argued that double jeopardy barred prosecution because the University had previously punished Kauble in a disciplinary proceeding for the same conduct. The district court agreed and dismissed the case. The State appealed.

The State's reserved question of law now before the Court is whether a sanction of probation and/or community service imposed by the University of Oklahoma in a school disciplinary proceeding bars future criminal proceedings for the same conduct in state court. This is an issue of first impression for this Court. However, the Court is not without guidance in answering this question. Both the United States Supreme Court [3] and this Court [4] have addressed the effect of the Double Jeopardy Clause on criminal and administrative proceedings.

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." [5] At issue here is the third "abuse" multiple punishment. Over the past ten years, the United States Supreme Court has expounded on multiple punishment in civil and criminal proceedings on several occasions. The first key case in this area is *United States v. Halper.* [6]

In *Halper,* the defendant was convicted in a criminal proceeding of presenting sixty-five false medical claims to Medicare and receiving $585 in overpayment from the federal government. Halper was sentenced to jail and fined $5000. After the criminal proceeding, the government instituted a civil proceeding concerning the same sixty-five false claims. The civil action would have subjected Halper to $130,000 in fines. The Court found that although the second proceeding was "civil," that characterization alone did not resolve the question of whether the penalty was punishment under the Double Jeopardy Clause. Rather the question of whether the penalty was punishment

---

1. Title 16.1 provides that a violation of the University of Oklahoma Student Code includes:

   All forms of dishonesty such as cheating, plagiarism, knowingly furnishing false information to the institution, forgery, alteration or misuse of institution records or documents, including University identification cards. When dishonesty is primarily related to an academic matter such as cheating or plagiarism, the provision of the Norman Campus Academic Misconduct Code shall apply.
   O.R. at 59.

2. Title 16.25 provides that it is a violation of Student Code to violate "applicable Local, [S]tate or Federal laws." O.R. at 59.

3. *United States v. Ursery,* 518 U.S. ——, ——, 116 S.Ct. 2135, 2146, 135 L.Ed.2d 549 (1996) (finding Double Jeopardy Clause did not bar government from proceeding with both criminal prosecution and civil forfeiture proceeding because *in rem* civil forfeiture is not punishment); *Depart-*

*ment of Revenue v. Kurth Ranch,* 511 U.S. 767, 770, 114 S.Ct. 1937, 1947, 128 L.Ed.2d 767 (1994) (finding Montana's drug tax was punitive rather than remedial, Court concluded double jeopardy barred second proceeding to collect tax after criminal prosecution for possession of drugs); *United States v. Halper,* 490 U.S. 435, 449–50, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989) (finding civil fine imposed under civil false claims statute, which was grossly disproportionate to damages incurred by government in prosecuting its claims, constituted punishment and was barred since defendant had been previously subjected to criminal punishment for same conduct).

4. *Kane v. State,* 915 P.2d 932 (Okl.Cr.1996); *see also Lozoya v. State,* 932 P.2d 22 (Okl.Cr.1997).

5. *Halper,* 490 U.S. at 440, 109 S.Ct. at 1897.

6. 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

could be determined "only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." [7]

> [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment ... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.[8]

In remanding the case to the lower court, the Supreme Court stated the civil penalty was grossly disproportionate to the actual damages suffered by the government and bore "no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word...." [9]

The question of multiple punishment again arose in the context of civil tax proceedings. In *Department of Revenue v. Kurth Ranch*,[10] the Court found that Montana's state tax on illegal drugs was punishment subject to the Double Jeopardy Clause. The factors that persuaded the Court that the tax was a punishment included: (1) the high rate of the tax; (2) the deterrent purpose behind the tax; (3) a person had to commit a crime, i.e. possess illegal drugs, in order to become subject to the tax; and (4) the tax was levied only after the property, i.e., the illegal drugs, had been destroyed or confiscated by the government. The Court reasoned, "Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." [11] Accordingly, Montana could not institute a separate proceeding to exact a tax against a defendant where that tax was designed to punish the defendant a second time for the same conduct.

Since its decisions in *Halper* and *Kurth Ranch*, the Supreme Court in *United States v. Ursery* [12] has held that *in rem* civil forfeiture proceedings are not punishment for the purpose of the Double Jeopardy Clause. In so holding the Court noted that historically *in rem* forfeiture proceedings have not been viewed as punishment,[13] distinguished civil forfeitures from civil penalties,[14] and stated that civil forfeiture statutes were not so punitive as to render the statutes criminal.[15] Although the civil forfeiture statutes had "certain punitive aspects," the statutes served important non-punitive goals [16] and did not implicate the Double Jeopardy Clause.[17]

The key Oklahoma case addressing the Double Jeopardy Clause in administrative proceedings is *Kane v. State*.[18] The question in *Kane* was whether the Double Jeopardy Clause barred prosecution for the misdemeanor offense of Driving Under the Influence after the State had revoked the defendant's driver's license in an administrative proceeding. The *Kane* Court stated that "license revocation would constitute multiple punishment if: (1) the State subjected the defendant to separate proceedings; (2) the conduct precipitating the separate proceedings consisted of one offense; and (3) the

---

7. *Id.* at 447, 109 S.Ct. at 1901.

8. *Id.* at 448–49, 109 S.Ct. at 1902.

9. *Id.* at 449, 109 S.Ct. at 1902.

10. 511 U.S. 767, 770, 114 S.Ct. 1937, 1947–48, 128 L.Ed.2d 767 (1994).

11. *Id.*, 511 U.S. at 783, 114 S.Ct. at 1948.

12. 518 U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

13. *Id.* at ——————, ——, 116 S.Ct. at 2140–42, 2149.

14. *Id.* at ——, 116 S.Ct. at 2145.

15. *Id.* at ——, 116 S.Ct. at 2148.

16. *Id.* at ————————, 116 S.Ct. at 2148–49.

17. *See Lozoya v. State*, 932 P.2d 22, 27 (Okl.Cr. 1996) (holding Oklahoma forfeiture statutes "are not punitive in nature, but rather are civil and remedial in nature" and do not implicate Fifth Amendment Double Jeopardy Clause).

18. 915 P.2d 932 (Okl.Cr.1996).

penalties in each of the proceedings could be considered 'punishment' for purposes of the Double Jeopardy Clause." [19] After finding that the defendant was subject to two separate proceedings for the same conduct, the Court turned to the question of whether the license revocation constituted punishment. The Court stated:

> To determine whether the revocation of a driver's license is punishment for double jeopardy purposes, one must review the purposes the revocation serves. If the revocation may be fairly characterized only as a deterrent or as retribution, then it is punishment. If the revocation may be fairly characterized as remedial, then it is not punishment for double jeopardy purposes. In order to ascertain whether license revocation is punitive, this Court must look at the purposes that the revocation serves rather than the effect of the revocation on a defendant. [20]

The Court found the license revocation proceeding served "the legitimate nonpunitive purpose of protecting the public from the dangers presented by drunk drivers and helps enforce regulatory compliance with the laws governing the licensed activity of driving." [21] Thus, the license revocation statute

"may be fairly characterized as remedial" and did not implicate the Double Jeopardy Clause.

We now turn to Kauble's case. The State of Oklahoma, acting through the University of Oklahoma,[22] conducted a disciplinary proceeding against Kauble in which Kauble pleaded guilty to falsely reporting a car-jacking in violation of school rules and was placed on academic probation and ordered to perform community service at the University. The State instituted a criminal proceeding against Kauble charging him with violating Oklahoma statutes by falsely reporting a car-jacking. The false reporting in both cases is based on the same conduct. Thus, Kauble is subject to two separate proceedings for the same conduct. The State does not dispute this characterization. The pivotal question is: Whether the sanction imposed by the University of Oklahoma was punishment within the meaning of the Double Jeopardy Clause.

Although Oklahoma courts have not directly addressed this issue, other courts have and not one court has found that sanctions imposed in a school disciplinary proceeding constitute punishment under the Double Jeopardy Clause.[23] For example, in *State v.*

19. *Id.* at 935 (citing *New Mexico v. Kennedy*, 120 N.M. 619, 904 P.2d 1044, 1051 (1995)).

20. *Id.* at 937 (citations omitted).

21. *Id. Kane* was handed down before the Supreme Court announced its decision in *Ursery*. However, both the Supreme Court and this Court stated *in rem* forfeiture proceedings are different from *in personam* proceedings at issue in *Kane*.

22. *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192, 109 S.Ct. 454, 462, 102 L.Ed.2d 469 (1988) ("A state university without question is a state actor").

23. *North Carolina v. Davis*, 126 N.C.App. 415, 485 S.E.2d 329, 332 (1997) (expelling high school student from school for selling marijuana on school grounds did not constitute punishment within meaning of Double Jeopardy Clause and did not bar state prosecution); *Ohio v. Wood*, 112 Ohio App.3d 621, 679 N.E.2d 735 (1996) (university proceeding in which school barred non-student alumnus from certain university facilities due to disruptive behavior did not bar subsequent state prosecution because state prosecution concerned separate offense); *Ex rel.*

*E.R.D.*, 551 N.W.2d 238, 242–43 (Minn.App. 1996) (suspending student for carrying knife to school did not bar future prosecution for same conduct because suspension was remedial, related to safety and institutional order of others and was not punishment under Double Jeopardy Clause); *Clark v. Georgia*, 220 Ga.App. 251, 469 S.E.2d 250, 252 (1996) (suspending student who confessed to robbery did not bar state prosecution on robbery charge because suspension served remedial purpose of protecting safety and welfare of other students and was not punishment); *In re Gila County Juvenile Delinquency Action*, 169 Ariz. 53, 816 P.2d 950, 951 (Ariz.Ct. App.1991) (expelling minor from school did not constitute punishment because primary purpose of expulsion was remedial in that it was designed "to protect students and the faculty and to preserve the integrity and continuity of the school process"); *see also Kister v. Ohio Bd. of Regents*, 365 F.Supp. 27, 39 (S.D.Ohio) (state statutes authorizing dismissal or suspension of university faculty and students who had been convicted of certain crimes did not violate double jeopardy), *aff'd by* 414 U.S. 1117, 94 S.Ct. 855, 38 L.Ed.2d 747 (1974); *Paine v. Bd. of Regents of Univ. of Texas*, 355 F.Supp. 199, 203 (W.D.Tex.1972) (no double jeopardy violation where university student is suspended from school and prosecuted

*Sterling,*[24] the University of Maine suspended a student and revoked part of his athletic scholarship because the student assaulted another student. The lower court found that the partial revocation of the scholarship constituted punishment within the meaning of the Double Jeopardy Clause and barred criminal prosecution for the same conduct. The Supreme Court of Maine reversed holding that the partial revocation of the scholarship was remedial, that it served the non-punitive purpose of "safeguarding the integrity" of the university and that it did not constitute punishment within the meaning of the Double Jeopardy Clause.[25] Likewise, in *In re C.M.J.,*[26] the Kansas Supreme Court found that suspending a high school student from school for carrying a loaded weapon in the school parking lot did not bar the state from prosecuting the student as a juvenile for the crime of possessing a firearm. In reaching this conclusion, the Kansas court reasoned that the expulsion from school served the vital remedial goals of maintaining institutional order, assuring safety in school facilities, maintaining discipline, and creating a wholesome academic environment.

Here, the University of Oklahoma disciplined Kauble for violating T.16.1 and T.16.25. of the Student Code. In a hearing before the district court, the State's attorney stated that the purpose of the discipline was remedial. The discipline was designed to protect the public from harm, to protect the University's resources and to protect other students. The State's attorney stated, "It's not to punish the defendant. It is to ensure that he graduates. It's to give him a chance to perhaps rehabilitate himself and graduate."[27] We agree that the primary purpose of the discipline imposed by the University was remedial: to protect the integrity of the University and its resources; to rehabilitate the defendant and help him to graduate; and to protect the safety of the other students.

Kauble does not argue that the sanction of probation is punishment under the Double Jeopardy Clause. Rather, Kauble focuses on the sanction of "community service." Kauble argues that community service is different from the sanctions of suspension, probation or expulsion and cannot be deemed remedial. Kauble correctly points out that none of the cases discussing double jeopardy in the context of school disciplinary proceedings involves the sanction of community service. Kauble relies on this distinction and this particular sanction to argue that in his case the State imposed punishment in the University proceedings. We disagree.

The sanction of community service is only one of a number of sanctions that the University employs to protect its integrity, resources and to assist its students who have violated the Student Code. Community service is by no means the most severe sanction available. Kauble surely preferred community service to expulsion and being denied the opportunity to obtain a degree.[28] The label "community service" alone does not denote whether that sanction is remedial or primarily punitive.[29] Indeed, the Court of Appeals of Wisconsin in *State v. Lawton*[30] rejected a double jeopardy claim in the context of a license revocation case and noted

criminally for drug offense); *Center for Participant Educ. v. Marshall,* 337 F.Supp. 126, 137 (N.D.Fla.1972) (finding university disciplinary proceeding was non-criminal, did not involve a loss of liberty and did not implicate double jeopardy protections); *Clements v. Bd. of Trustees of Sheridan County,* 585 P.2d 197, 199 (Wyo.1978) (suspension from school was not punishment for double jeopardy purposes).

24.   685 A.2d 432 (Me.1996).

25.   *Id.* at 434.

26.   259 Kan. 854, 915 P.2d 62 (1996).

27.   Mar. 15, 1997 Tr. at 5.

28.   The dissent characterizes community service in the university context as being "required servitude" and as "[r]equiring the student to perform labor." Actually, this characterization is incorrect. What it overlooks is the fact that university disciplinary proceedings, unlike court proceedings, are not and cannot be made obligatory. Rather, they are in a broad sense voluntary or quasi-contractual at most. Kauble had an option. He could refuse to perform the University ordered community service and not attend the University or perform the service and continue his education.

29.   *See e.g. Kurth Ranch,* 511 U.S. at 777, 114 S.Ct. at 1945.

30.   167 Wis.2d 461, 482 N.W.2d 142 (Wis.Ct.App. 1992).

that community service is not simply a punitive sanction. There, the defendant had been subject to a civil administrative proceeding in which he could be sanctioned with revocation of his driver's license, required to attend driving school and an alcohol assessment program, and required to perform community service. In finding that the sanction of community service was remedial and not punitive, the Wisconsin court stated, "Community service, particularly when it involves tasks such as emergency room assistance, can further rehabilitative goals." [31] Likewise here, we find that the community service Kauble is to perform for the University of Oklahoma is remedial rather than punitive. It is designed to maintain institutional order, assure safety in school facilities and maintain discipline at the University of Oklahoma. Moreover, unlike the penalties at issue in *Halper* and *Kurth Ranch,* the penalty here is not extreme or grossly disproportionate or an anomaly. Rather, the community service imposed by the University is rationally related to the University's remedial goals.

Accordingly, in answering the reserved question of law, we find that the Double Jeopardy Clause does not bar the criminal prosecution of Kauble in state court. The order of the district court is reversed and the case is remanded to the district court for further proceedings.

## DECISION

The case is reversed and remanded to the district court for further proceedings.

STRUBHAR, V.P.J., and LUMPKIN and JOHNSON, JJ., concur.

LANE, J., dissents.

LANE, Judge, dissenting:

I agree with the majority as to its conclusions of law. However, I disagree with the application of the law to the facts of this case. I find that the imposition of community service is for purely punitive purposes, and not remedial. To say that it is for the better-

ment and protection of the university community is a fiction that would classify any punishment rendered by the State of Oklahoma through a student disciplinary proceeding as remedial including assessing fines, loss of credits, and flogging.[1]

The majority states that it has not found any cases where a student disciplinary sanction has been found to be subject to double jeopardy prohibitions and cites many cases. However, when you look at the facts of those cases it is evident that the sanction in all of them was either expulsion or suspension. None of the remedies required servitude as does community service. Eliminating undesirable students from the rolls of the school is remedial. Requiring the student to perform labor is not.

The majority cites a Wisconsin case as authority to find that community service is not punishment.[2] In response, I would first say that I do not agree with the intermediate Wisconsin court since, as pointed out above, I think requiring servitude is punishment and not remedial. Second, I would point out a major discrepancy between the Wisconsin case and our current matter. Lawton was given a "civil citation" for operating a motor vehicle while intoxicated (OMVWI) as a first offender. He was later prosecuted for vehicular homicide. The case points out that this citation was not a criminal matter under Wisconsin law since the legislature removed fines or imprisonment as penalties for a violation of the OMVWI law and the elements of the two charges were different.[3] We do not have that situation here. Here, the university punished Kauble for falsely reporting a crime to the university police, and the State is also prosecuting him for the same thing in the district court. In my opinion, this is double jeopardy. It is the same incident, and the elements are the same.

I dissent.

31. *Id.* at 475, 482 N.W.2d at 148.

1. The authority of the university to require community service as a sanction is not challenged in this appeal.

2. *State v. Lawton,* 167 Wis.2d 461, 482 N.W.2d 142 (1992).

3. *Lawton,* 482 N.W.2d at 146.